UNITED STATES *v.* TWENTY-NINE GALLONS OF WHISKY, etc.,
(TURNER *et al.*, Claimants.)

*(District Court, D. Montana. April 20, 1891.)*

1. INTOXICATING LIQUORS—TRANSPORTING THROUGH INDIAN COUNTRY.
    Transporting ardent spirits as an article of commerce through an Indian country, between places outside the same, is not a violation of Rev. St. U. S. § 2139, which provides that "no ardent spirits shall be introduced, under any pretense, into the Indian country."

2. SAME—SEIZURE—PLEADING.
    In a libel to forfeit whisky alleged to have been introduced into an Indian country, a plea that claimant did not unlawfully introduce said whisky into any Indian country, and that he did not introduce it intending to sell or dispose of it to any Indian, is bad, since the first allegation is a conclusion of law, and the second is irrelevant.

3. SAME.
    A plea that the whisky when seized was in the claimant's possession, and that he was then on his road from a town named to another town not named, neither of such towns being within any Indian country, is also bad, since it does not show that the whisky was in transit when seized, or that the unnamed town was off the reservation.

At Law. Libel for forfeiture on demurrer to answer.
*Thos. C. Bach*, for claimants.
*Elbert D. Weed*, U. S. Atty.

KNOWLES, J. In this case 29 gallons of whisky and other articles were, it is alleged in the libel of information, seized by George Steel, an Indian agent, upon the Blackfoot Indian reservation, as articles not permitted by law on said reservation, and forfeited to the United States. It is alleged in said libel that said whisky was introduced into and found in the Indian country, with the articles enumerated as accompanying the same, to-wit, upon the Blackfoot Indian reservation. It is provided by the statutes of the United States (see Rev. St. § 2139) that "no ardent spirits shall be introduced, under any pretense, into the Indian country." And in section 2140:

"If any superintendent of Indian affairs, Indian agent, or subagent, or commanding officer of a military post, has reason to suspect, or is informed, that any white person or Indian is about to introduce, or has introduced, any spiritous liquor or wine into the Indian country, in violation of law, such superintendent, agent, subagent, or commanding officer may cause the boats, stores, packages, wagons, sleds, places of deposit of such person to be searched;

and, if any such liquor is found therein, the same, together with the boats, teams, wagons, and sleds used in conveying the same, and also the goods, packages, and peltries of such person, shall be seized and delivered to the proper officer, and shall be proceeded against by libel in the proper court, and forfeited."

The said Indian agent, and the United States attorney for the district of Montana, have proceeded in accordance with the provisions of this statute.

The claimants of said whisky and other articles are Robert Turner and Elias Turner, who have made answer to the above libel.    The third specification in their answer is as follows:

"Deny that they, or either of them, unlawfully introduced the said twenty-nine gallons of whisky, or any thereof, or any of the goods seized, or any other goods, into any Indian country, or that they, or either of them, or any one else, introduced said goods, or any thereof, within any Indian country or Indian reservation, meaning or intending to sell or dispose of the same, or any thereof, to any Indian, at any place."

The allegation that they did not unlawfully introduce said whisky is a legal conclusion.    The allegation amounts to an admission that they introduced the whisky into an Indian country.    The allegation that the whisky was introduced, without any intention of selling the same to any Indian, amounts to no justification.    The introduction of ardent spirits, under any pretense, into an Indian country, is unlawful, for it is prohibited by said section 2139, above referred to.

The fourth clause of the claimants' answer is as follows:

"*Fourth.* [Claimants] allege and propound the fact to be that at the time mentioned in said libel of information, that said property in said libel mentioned was in the possession of said Elias Turner, at the time of its seizure, and that he was at said time on his road from the town of Dupuyer, in the county of Choteau, Mont., to the town of ——, a town on the line of the Great Northern Railroad, in Montana, neither of which places is within any Indian reservation or Indian country, and was proceeding upon his journey to said last-mentioned place, as he had a lawful right to do, and was not intending to dispose or sell, and that he did not dispose or sell, any of said whisky or spiritous liquor, or any goods, to any person within any Indian reservation or Indian country."

It will be observed that in these allegations it is not directly alleged that said whisky was being transported across the reservation mentioned in the libel, or that the same was *en route* from some place outside of the reservation to some place beyond the same; but it is alleged that the claimant Turner was so *en route* across said reservation, and did not intend to sell or dispose of said whisky to any one on the Indian reservation.    This is not the allegation that should have been made.    There is another objection to these allegations.    They do not clearly show that the place on the Great Northern Railroad where said claimant was going was off of the said reservation.    It is true he says it is.    But the place is not named, and the court cannot see that it is beyond the reservation. If the place was named, the court might take judicial notice as to whether the place was off or on the reservation.    It might turn out that it was

only the opinion of claimant that it is beyond the reservation.    Certainly the plaintiff, the United States, could not take issue upon the point as to whether it was off the reservation.    For these reasons I think the demurrer should be sustained.

The point that it should be sustained, urged by the United States district attorney, because it appears in the answer, that the whisky was found and seized upon the said reservation, without any consideration of how it came there, and the claimants show no license or permission to carry it there, I do not think well taken.    In construing the statute under consideration, we should look at the object of the same, and the evil sought to be remedied thereby.    The purpose of the statute was undoubtedly to prevent the placing of whisky, or ardent or spirituous liquors, in such a place as would make it accessible to Indians.    It was not the purpose of that statute to interfere in any manner with the commerce in spirituous liquors between sections of the country not Indian.    The construction of that statute, which would allow the seizing of spirituous liquors found upon an Indian reservation without reference to the purposes in regard to which it came there, would prevent the transportation of such liquors from the east to the Pacific coast on the line of the Northern Pacific Railroad.    It would prevent such liquors from being transported to Montana, on the line of that road, or the Great Northern road; for it is well known that all these roads traverse, before they reach the settled portions of Montana, Indian reservations.    If the simple fact of the finding of such liquors within an Indian reservation, without license, is sufficient to make the same liable to forfeiture, and all conveyances in which the same may be found, then there is not a through passenger train on either the line of the Great Northern or Northern Pacific Railroads which would not be subject to seizure and forfeiture, under the above statute; for both carry, it is well known, more or less spirituous liquors across Indian reservations on the line of said roads.    I do not think congress in this statute contemplated any such result.    For these reasons I hold that the proper construction of the above statute, as to the terms, "no ardent spirits shall be introduced, under any pretense, into the Indian country," is as follows:    Whenever such liquors are taken into an Indian country, as their place of destination or use, then they have been introduced into such country.    In other words, when such liquors reach an Indian country, as the end of their journey, they have, within the meaning of that statute, been introduced into such country.    It is not necessary to show that they were brought there for the purpose of sale to Indians or any one.    The transportation of such liquors through an Indian country, between places outside the same, as an article of commerce, is not, within the meaning of that statute, introducing them into said country.    For the reasons before stated, the demurrer is sustained to the answer.