[Criminal No. 406. Filed December 22, 1916.]

[161 Pac. 885.]

## W. A. REYNOLDS, Appellant, v. STATE, Respondent.

1. INTOXICATING LIQUORS—OFFENSES—BRINGING INTO STATE—"INTRODUCE."—Intoxicating liquors are introduced into the state, within Constitution, article 23, section 1, providing that intoxicating liquor shall not be introduced into the state under any pretense, when the liquors have been intentionally transported into the state as the result of a transaction set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy, nor the distance over which it may be exerted, either within or without the state, so long as the transaction results in bringing the liquor within the territorial jurisdiction of the state.

2. CRIMINAL LAW—VENUE—PLACE OF OFFENSE.—The offense of introducing liquors into the state is not completed till they reach their destination, but the offense is committed in every portion of the state over which they are transported, and if the route is in part in one county and in part in another, the offense is committed in part in each county, and may be prosecuted in either county under Penal Code of 1913, paragraph 812, providing that when a public offense is committed in part in one county and in part in another, or the acts or effects thereof requisite to consummation of the offense occur in two or more counties, the jurisdiction shall be in either county.

3. WORDS AND PHRASES—"CONTINUING OFFENSE."—A continuing offense is a transaction or a series of acts set on foot by a single impulse and operated by an unintermittent force, no matter how long a time it may occupy.

4. INTOXICATING LIQUORS—CRIMINAL PROSECUTIONS—SUFFICIENCY OF EVIDENCE—CORPUS DELICTI.—In a prosecution for introducing liquor into the state, evidence *held* sufficient to establish the *corpus delicti*, independent of admissions and statements by accused.

5. CRIMINAL LAW—APPEAL—PRESUMPTIONS—MATTERS NOT IN RECORD.—Where the record shows that a portion of the evidence is not included, the supreme court will presume that it is sufficient to cure defects in the evidence brought up to establish *corpus delicti*.

6. INTOXICATING LIQUORS—CRIMINAL PROSECUTION—EVIDENCE—CORPUS DELICTI.—The *corpus delicti* of the offense of introducing liquor into the state may be established by circumstantial evidence.

7. INTOXICATING LIQUORS—PROSECUTIONS—INSTRUCTIONS.—In a prosecution for introducing liquor into the state, a charge that under the law, if the evidence warrants it, the jury may find defendant guilty, for any person who introduces into the state any ardent spirits, etc., shall be guilty of a misdemeanor, is not objectionable as requiring the jury to convict even if the liquor were introduced for a lawful purpose, where no issue as to the purpose of introducing the liquor was raised at the trial.

8. CRIMINAL LAW—APPEAL—HARMLESS ERROR—INSTRUCTIONS.—In a prosecution for introducing liquor into the state, the defendant could suffer no injury from the failure to instruct as to the defense of lawful purpose of the introduction, when the purpose he was shown to have admitted was unlawful.

[As to the place where crime is deemed to have been committed as venue, see note in 44 Am. St. Rep. 79.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. G. P. Bullard, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. R. Wm. Kramer and Mr. G. W. Harben, Assistant Attorneys General, for the State.

CUNNINGHAM, J.—The county attorney of Maricopa county filed an information in the superior court of Maricopa county charging the appellant with unlawfully introducing whisky into the state of Arizona. The appellant demurred upon the grounds that the court had no jurisdiction of the offense charged in the information, for the reason, the offense, if committed at all, was necessarily committed in Yuma county. The demurrer was overruled. He thereupon entered a plea of not guilty, and upon the trial objected to the introduction of any evidence upon the same ground urged in his demurrer to the jurisdiction of the court. This objection was overruled.

The facts developed by the evidence, according to appellant's statement of the facts in his brief, are:

"That appellant and his wife were found in an automobile at Agua Caliente, Maricopa county (the defendant driving and in full charge of the machine and contents); that said automobile was upon the road leading from Yuma to Phoenix;

and that in said automobile was two barrels of whisky and several bottles of whisky.''

Preceding such statement, appellant says in the brief:

'' . . . The various witnesses for the prosecution questioned appellant as to where he got the whisky, and that appellant stated 'that it was loaded in his automobile at El Centro in the Imperial Valley, California, and that he had brought the same into Arizona via Yuma across the railroad bridge at Yuma, said whisky having been transported all the way in his automobile; that he was carrying the whisky in the barrels for Jack Elliott, and that said Elliott had given him the whisky in the bottles as pay for the carriage of the whisky in the barrels.' ''

The record bears out such statements as the evidence.

The further facts appear from the record that the appellant was stopped while traveling east along the Arizona-California highway at about 9 o'clock in the morning, and at the time he was stopped the whisky in barrels found in the machine was covered up with bedding or canvas, and the bottles were in every part of the machine where space permitted. The whisky was contained in two kegs or barrels, and in fifty or sixty bottles. The jury were permitted to make an examination of the appearance of the kegs or barrels, as to the condition of labels and marks thereon. Some of the bottles were received in evidence. The condition of the labels and markings on such kegs or barrels does not appear in the record as a part of the evidence. The appellant was convicted and sentenced to punishment, from which judgment he has appealed.

The motions and objections made, and exceptions reserved by the appellant to the court's rulings duly present for our consideration three dominant questions, viz.: (1) whether the offense of the unlawful introduction of intoxicating liquors into the state may be tried in an interior county of the state. (2) Whether the evidence is sufficient in law to sustain a conviction. (3) Whether the court erred in its instructions to the jury or failed to give a necessary instruction. These questions will be discussed in the order in which they are above set forth.

The appellant contends that every element necessary to constitute the offense of the unlawful introduction of intoxi-

cating liquors into the state is complete the moment the intoxicating liquor crosses the state line. He argues that the offense is not in its nature a continuing offense, for the reason the law is not violated by transporting intoxicating liquors from one county of the state to another county of the state, and that as Maricopa county is an interior county, intoxicating liquors cannot, in the very nature of things, be transported into Maricopa county from without the state without necessarily crossing some other county of the state. And, as the act of introduction is complete the moment the liquor crosses the state line, the offense is necessarily committed in the county into which it enters the state, and is triable only in such county. If we concede that the mere act of passing intoxicating liquors over the state line completes the "introduction" of liquors into the state within the meaning of section 1, article 23 (Prohibition Amendment), of the state Constitution, then, certainly, appellant's contention is correct. But this we cannot concede. In *Sturgeon* v. *State,* 17 Ariz. 513, 527, 154 Pac. 1050, 1055, we said:

"That the word 'introduce' as used in the law is not a technical word. It is one of ordinary meaning and common acceptation, and is used as such in the constitutional amendment" (giving the definition of the word from the approved dictionaries of the language).

The constitutional amendment reads as follows:

"Ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind shall not be manufactured in or introduced into the state of Arizona under any pretense."

In *Gherna* v. *State,* 16 Ariz. 344, 361, Ann. Cas. 1916D, 94, 146 Pac. 494, 501, we suggest in relation to the purpose of the amendment as follows:

"It is perfectly obvious, to the mind of candid inquiry: That the prohibition of the manufacture and traffic in liquor in Arizona is the main purpose sought to be accomplished by the amendment, and that the prohibition concerning the introduction of liquor into Arizona is rather an auxiliary or as an incidental to the better accomplishment of the main design. That the prohibition of its introduction will be contributory to the accomplishment of the main object, to wit, the suppression of the liquor traffic."

To this last expression we may very properly add: "The suppression of the liquor traffic in the entire state," for such is the meaning. The evil intended to be corrected by the prohibition amendment, then, was the evil wrought by the liquor traffic carried on in every county in the state. The transportation of such liquor into the state would make it accessible for traffic, and its accessibility to use in traffic is present in any county into which it is transported. The law must have been intended by the legislative power enacting it, to operate coextensive with the evil sought to correct, and giving effect to the legislative intent, the provision must be interpreted to mean that the liquors mentioned shall not be transported into any part of the state, without regard to county lines. That the offense is committed when any of the liquors are brought into any part of the state of Arizona, and thereby made accessible to be used in violation of law, there can be no question.

Where one has the control over the whisky, as by having it loaded in his automobile in an adjoining state, for the purpose of transporting it to a specified point in this state as a single transaction, and in carrying out such transaction he brings, leads, carries, puts, conducts, ushers or hauls such liquors into the state, any distance, a few feet or a few hundred miles, as contemplated, then he has introduced the whisky into the state. The distance into the state which he succeeds in transporting the whisky is of no effect other than requiring greater or less time and power for its accomplishment. Such time and power if devoted to the accomplishment of the single purpose of carrying out the original transaction, as a part of the one transaction, are parts of the original transaction. If the transaction had in contemplation the mere passing of the whisky over the invisible state line, and it was passed over the line, then the transaction commenced, for the single purpose, was completed, and the result is, the whisky was thereby introduced into the state. And, if such introduction of the whisky was for an unlawful purpose, the offense was complete and triable in the county into which it was introduced, viz., the border county. If, however, after the whisky was passed over the state line, in accordance with the original transaction, and reached its

destination in the border county, and thereupon another or the same person entered upon another transaction by which he undertook to transport the same whisky into another county of the state, as a new and separate enterprise, wholly independent of the original transaction of passing the whisky over the state line, then, such second transaction would not amount to the introduction of the whisky into the state, because the transaction would have been commenced and ended wholly within the state. If by such supposed second transaction the whisky is transported from one county into another county of the state for the purpose of sale or other unlawful purpose, the transaction may properly be denominated an introduction of the whisky into the latter county, but such transaction, whatever the purpose, is not denounced as a public offense.

Intoxicating liquors are introduced into the state, within the meaning of the said amendment, when the liquors have been intentionally transported into the state as the result of a transaction set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy, nor the distance over which such force may be exerted, either within or without the state, so long as the transaction as carried out results in placing the liquors within the territorial jurisdiction of the state. And, when such transaction is commenced and prosecuted with the intention to use such liquors in the state for any unlawful purpose, the offense is committed by the acts of transporting the whisky in consummation of the original transaction. When the whisky, so transported into Arizona as a part of the original transaction, is carried into an interior county of the state, the acts of transporting the whisky committed in every county through which it may be passed are parts of the original transaction, and therefore parts of the offense. The original transaction is not completed until the whisky reaches its destination, but the offense is committed in every portion of the state over which the whisky is transported. If it was transported in part of the route in one county, and in part of the route in another county, then the offense was committed in part in each county, and under paragraph 812 of the Penal Code of 1913 may be prosecuted in either county.

But the appellant contends that the offense is not a continuing offense, and cannot be committed in other than a border county.

"A continuing offense is a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy." 2 Words and Phrases, p. 1510.

Assuming this is a correct definition of such offense, it is quite clear that this offense falls within the class defined.

We are not left entirely without precedent in the consideration of this question of place of trial. The supreme court of Wyoming, in *Patrick* v. *State*, 17 Wyo. 260, 129 Am. St. Rep. 1109, 98 Pac. 588, has considered and decided the question for that jurisdiction. No statute is cited in the opinion of the court fixing the place of trial at all, and I am constrained to believe, from my slight examination of the Compiled Statutes of Wyoming of 1910, that no statute similar to our statute (paragraph 812, Penal Code of Arizona, 1913) exists as a law of that state.

In the opinion that court says: "It is further contended that the district court of Natrona county had no jurisdiction of the offense for the reason that Natrona is an interior county and that the offense, if committed at all, must have been committed in the county which the sheep first entered. We think the point is not well taken. It is stated by counsel in argument that the sheep were shipped by rail to a station in Natrona county, that being their destination, and there is nothing in the record to the contrary. The statute does not attempt to prohibit shipments in that manner of such sheep through the state or through any county, but prohibits the bringing into any part of the state diseased sheep, the effect of which would be to endanger the health of its domestic sheep."

Thus placing the decision upon the completed original transaction, as a continuing offense. The means of transportation by rail is not an element.

In *Brown* v. *State*, 17 Ariz. 314, 152 Pac. 578, this court expresses the impression that our prohibition amendment is closely modeled after section 2139 of the Revised Statutes of the United States (Comp. Stats. 1913, § 4137). The portion of our law here involved is in the exact words of said

section 2139, with the exception that the "state" is substituted for the words "Indian country." The portion of section 2139 has been interpreted by the courts but in one case, so far as a search has revealed. In *United States* v. *Twenty-nine Gallons of Whisky*, 45 Fed. 847, the United States district court for the district of Montana, Knowles, J., said on page 849: "In construing the statute under consideration, we should look at the object of the same, and the evil sought to be remedied thereby. The purpose of the statute was undoubtedly to prevent the placing of whisky, or ardent or spirituous liquors, in such a place as would make it accessible to Indians."

Giving reasons not here important, he continues: " . . . For these reasons I hold that the proper construction of the above statute, as to the terms, 'no ardent spirits shall be introduced, under any pretense, into the Indian country,' is as follows: Whenever such liquors are taken into an Indian country, as their place of destination or use, then they have been introduced into such country. In other words, when such liquors reach an Indian country, as the end of their journey, they have, within the meaning of that statute, been introduced into such country."

This construction by that court is not binding on this or any other court, but it has reason in its support, as giving effect to the legislative intent and purpose for enacting the law and thereby correcting and preventing an evil existing or threatened, and undoubtedly places the decision on the original transaction as a continuing offense.

Appellant's second contention is that the evidence is insufficient to support a conviction, in the particular that aside from the extrajudicial admissions and confessions of the accused, the *corpus delicti* is not established by evidence. The appellant says: "The *corpus delicti* in this case was not the possession of the liquor, but the introduction of the same into the state of Arizona."

And: "The offense was the introduction into the state of Arizona of intoxicating liquor."

The great weight of authority is against the sufficiency of an uncorroborated extrajudicial confession to warrant a conviction. See *Commonwealth* v. *Killion*, 194 Mass. 153, 10

Ann. Cas. 911, 80 N. E. 222, and note to *Nolan* v. *State,* Ann. Cas. 1912B, p. 1249, for citations.

The weight of authority is to the effect that the *corpus delicti* need not be established beyond a reasonable doubt by evidence other than an extrajudicial confession. The courts have differed as to the application of the rule, and in the extent to which the corroborating evidence must go to support a conviction.

In this case the evidence, independent of the defendant's admissions, tends to show that the accused was on the direct road from the state of California into Arizona; that he was driving an automobile in an opposite direction from California, into Arizona; that the automobile was loaded with two kegs or barrels and fifty or sixty bottles, all filled with whisky; and that the defendant while so traveling along the highway in the direction mentioned was stopped by the officers early in the morning on the highway and placed under arrest. The question is: Did the defendant introduce the whisky found in his exclusive possession into the state, as understood above? Immediately the question will arise: What physical evidence the labels and marks on the kegs or barrels and bottles furnished as indicating the place or places in which they were filled?

The record furnishes no evidence of the exterior condition of these barrels or kegs and bottles. The jury properly inspected the barrels and some of the bottles received in evidence, but what evidence the inspection disclosed nowhere appears in the record. If an inspection would disclose that the labels show evidence of the barrels and bottles having been filled in California or other state or foreign country, this would be a circumstance, and when taken into consideration with the fact that no whisky is authorized to be manufactured lawfully in Arizona, the inference may be justly drawn therefrom that such vessels were filled with whisky in the place the labels claim, and since they were filled, they have been transported into the state. Such circumstance, with the circumstances mentioned above—the hauling of the whisky from the direction of another state into Arizona; the large quantity of whisky being hauled, and the manner of hauling it—all these circumstances and others shown in the record, when considered together, impel but one rational

conclusion, and that is, that the whisky was brought from California into Arizona by the person in possession of it for an unlawful purpose.

By the circumstances disclosed by the record, taken into consideration with the circumstances we must presume the inspection of the barrels and bottles disclosed to the jury, the *corpus delicti* was reasonably established independent of the admissions and statements made by the accused at and shortly after his arrest. These circumstances, in so far as appear in the record, corroborate the accused's statements. We presume the evidence disclosed by the inspection also corroborated his statements, for we cannot indulge a presumption operating against the validity of a judgment. In the absence of the evidence mentioned, we must presume it was sufficient for the purpose of curing defects in the evidence before us, otherwise insufficient to establish the *corpus delicti.*

I have no doubt of the sufficiency of circumstantial evidence alone to establish the *corpus delicti* of the offense charged. The circumstances in evidence presented by the record alone may not be sufficient for that purpose, but when, as here, evidence of other circumstances was considered by the jury, and we are left wholly to the fields of conjecture as to what facts such evidence tended to establish, the law requires us to go no further afield than to presume that such omitted evidence completes the chain and sufficiently sustains the judgment. The record as presented with the indisputable presumptions accompanying it, on appeal, must be considered as presenting sufficient evidence of a *corpus delicti* established to support a conviction independent of the extrajudicial statements and admissions made by the accused, consequently the contention of the appellant is not borne out by the record.

The last complaint of appellant deemed worthy of serious discussion is that of an instruction given the jury, as follows:

"I charge you, gentlemen of the jury, that under the law of the state of Arizona, if the evidence warrants it, you may find the defendant guilty, for the law is that any person who introduces into, or who attempts to introduce into, the state of Arizona any ardent spirits, ale, beer, wine or intoxicating liquor of any kind shall be guilty of a misdemeanor."

The reason appellant assigns why this instruction is erroneous is: "That by said instruction the jury were told it was

their duty to convict the appellant even if he introduced said liquor into the state for a lawful purpose, i. e., for the personal use of himself and for the personal use of Jack Elliott.''

The instruction quoted will bear no such construction. The court simply told the jury ''that under the law of the state of Arizona, if the evidence warrants it, you may find the defendant guilty,'' and sets forth the law in the language of the constitutional amendment. The instruction does not intimate, as contended, what effect the jury must give to the evidence, but clearly states that under the law he may be convicted if the evidence warrants. The use of the word ''law'' instead of the words '' 'under the information' if the evidence warrants it,'' which it was the evident purpose to use, was an unhappy selection of words. The instruction in no manner is dealing with the evidence, but it is dealing with the charge and with the law upon which the offense set forth in the information rests. The jury were not in effect told it was their duty to convict the appellant if he introduced the liquors into the state for a lawful purpose. The jury were told that he may be convicted of the offense, ''if the evidence warrants it,'' which, of course, must be understood as meaning that if the evidence did not warrant a conviction they could not convict him, but must acquit. The purpose for which the fifty or sixty bottles of whisky claimed by the appellant were brought into the state was not an issue at the trial. The appellant admitted that Elliott bought all of the whisky in California and employed defendant to deliver it in Arizona. That as compensation to him for carrying the whisky to the point of delivery, the agreement to be inferred from such statement is that he should receive the whisky in bottles as his pay for carriage, at the point of delivery. The effect of this is that appellant was engaged for a consideration to deliver whisky in Arizona to Jack Elliott for the purpose of selling fifty or sixty bottles of whisky in Arizona, to the accused, to pay the consideration of carriage and delivery. Under the law the payment of a debt or discharge of a promise by paying in property is a sale of such property so used in payment or discharge.

The record is not at all clear whether the contract mentioned was reached in Arizona or in some place outside of Arizona. The record discloses that Jack Elliott had lived at

Phoenix, Arizona, and that the appellant was seen at Phoenix a short time prior to the date of his arrest. The defendant had the whisky in bottles and in the barrels in his automobile as a single load at the time of his arrest, and at that time no delivery of the bottles of whisky had been made to him other than the same delivery of the barrels, at the place of purchase in California. Such delivery was a delivery by the seller to the purchaser, and the appellant received the goods from the seller for and in behalf of the purchaser. The whisky was carried from the point of receipt into Maricopa county as the purchaser's property, nothing to the contrary appearing, and so carried, his purchase of the whisky in bottles was not complete until delivery was made. Under his agreement with Elliott, no evidence to the contrary appearing, his purchase of the whisky was not complete nor intended to be complete until the entire load reached its destination in Arizona, notwithstanding appellant says Elliott gave him the whisky. Hence the admitted purpose of bringing the whisky into the state was to sell and deliver fifty or sixty bottles of whisky in discharge of the agreed cost of carriage of two barrels of whisky into Arizona.

So far as the necessities of this case go, it is immaterial what use Jack Elliott intended to make of the two barrels of whisky. The law was violated when he caused the fifty or sixty bottles of whisky to be brought into the state for the unlawful purpose of completing a sale in Arizona or of completing a gift of such whisky. The person who aided him to so bring said whisky into the state knowing the unlawful purpose is equally guilty as a principal. The purpose for which the whisky, at least, a portion of it in bottles, was introduced into the state was not a fact in issue, and was not required to be submitted as a special issue for that reason. The instruction complained of is not subject to the complaint made, nor for the reasons advanced. If the issue existed at all, it was not raised at the trial by evidence or otherwise, but is first suggested on this appeal. It now comes too late.

We are referred to *Sturgeon* v. *State*, 17 Ariz. 513, 154 Pac. 1050, as an authority sustaining appellant's contention in this respect. In that case we said, in speaking of the sufficiency of the indictment because of its failure to negative any exemption of a lawful use to which the intoxicating liquor was in-

tended when brought into the state, that "The information is not objectionable on this ground. If the point is available at all, it is a matter of defense to be taken advantage of by evidence on the trial of the case."

While this was said by way of argument in the Sturgeon case, it so clearly expresses the necessary manner of raising the question that it cannot be successfully disputed. The accused may, by offering evidence tending to show that he introduced the intoxicating liquors into the state for the honest purpose of applying such liquors to a lawful use, and if the evidence so offered raises a reasonable doubt in the minds of the jury, when considered with all the other evidence in the case, as to the lawful purpose intended, then it is the duty of the jury to give such defendant the benefit of such doubt, and acquit him. This is what we refer to in the Sturgeon case in speaking of the manner of asserting the defense at the trial. In this case the appellant failed to assert such defense as therein suggested he had a right to do.

In *Stansbury* v. *State,* 17 Ariz. 535, 155 Pac. 301, we had the question before us in passing on an instruction given and on an instruction refused. The court gave the jury an instruction to the effect that even though they should "believe from the evidence that the defendant introduced the liquor for the sole purpose of drinking it, or using it for his own personal use, and without any purpose or intent whatever to dispose of, give away, barter, exchange or sell the said liquor in any manner whatsoever," still the jury would be justified in finding the defendant guilty. The court refused a requested instruction which was the converse of the instruction given. We said: "The question as to whether the appellant brought the liquor into the state for his personal use is a question of fact to be submitted to and passed upon by the jury, and, if sustained by the evidence in the case, is a proper and legal defense. The jury should have been so informed by the instructions of the court."

The court having given the instruction condemned was sufficient reason for assuming that the defendant offered some evidence on the trial tending to show the purpose for which the liquor was introduced was a lawful one, otherwise the necessity of instructing at all would not have existed. The

necessity to instruct also requires a substantially correct instruction, hence the failure of the court to perform its duty.

The instruction here complained of did not have the effect of either presenting to, or withholding from, the consideration of the jury the question of defendant's purpose for introducing the whisky into the state. He did not raise that question at the trial by offering evidence in support of such defense, or otherwise, but, on the other hand, the state introduced evidence tending to prove that he had admitted that he brought a portion of the whisky into the state for the purpose of paying his charges for transporting two barrels of whisky into the state, which was certainly an unlawful purpose.

The appellant could suffer no injury from the court's failure to instruct the jury of the defendant's right to interpose the defense of lawful purpose, when the purpose for which he was shown to have admitted was unlawful, and the jury would have been compelled to disbelieve defendant's own claims as untrue, in order to give him the benefits of the possible defense. The instruction given does not have the effect of misstating the law for the reasons urged. These reasons are not applicable to such instruction. They are applicable to a question of failure of the court to submit by instruction such special defense. Such failure to instruct is not the subject of complaint. No such defense was interposed by evidence or otherwise at the trial, and so far as the record discloses was not attempted to be raised other than on appeal in this court. No error was committed by the court's failure to submit such defense by special instructions, under the facts of this case.

The other questions raised by appellant, not specially noticed, all depend upon the decision of the above questions, and require no discussion in detail.

I find no reversible error in the record. The whole case considered, I am of the opinion the conviction is in accordance with the law, and therefore the judgment should be affirmed.

FRANKLIN, J., concurs.

ROSS, C. J. (Dissenting).—The information lays the venue of the charge in Maricopa county, state of Arizona, and whether this is correct or not is the important and serious.

question, as I view it.  Stripped of formalities, the information accused the appellant "of the crime of introducing intoxicating liquor into the state of Arizona, . . . committed as follows, to wit: The said W. A. Reynolds on or about the twenty-third day of December, 1915, and before the filing of this information, at and in the county of Maricopa, state of Arizona, did then and there willfully and unlawfully introduce into the county of Maricopa, state of Arizona, certain intoxicating liquor, to wit, whisky, contrary to the form, force, and effect of the Constitution and the statute in such cases made and provided, and against the peace and dignity of the state of Arizona."

It is the contention of the appellant that the venue of the alleged crime is in the county bordering the state line into which he first brought the liquor.  If I understand the contention of the Attorney General correctly, it is that the venue of the alleged offense is in the county of the state which the appellant intended as the destination of the liquors.

The contentions, it will be seen, revolve around the word "introduce," as it appears in the constitutional amendment, and the decision depends upon the construction that shall be given to that word.

The amendment says: " . . . Intoxicating liquor . . . shall not be . . . introduced into the state of Arizona," and "every person who . . . introduces into . . . the state of Arizona . . . intoxicating liquor . . . shall be guilty," etc.

The language of the prohibition amendment left out of the above quotation forbids the manufacture and traffic in intoxicating liquor, and is an unquestioned rightful exercise of the police power of the state.  Following the uniform line of decisions of all of the courts of this country, we so held in *Gherna* v. *State*, 16 Ariz. 344, Ann. Cas. 1916D, 94, 146 Pac. 494, and in *Sturgeon* v. *State*, 17 Ariz. 513, 154 Pac. 1050. In the last case this court said:

"Three crimes are defined and denounced by this section: (1) The traffic in intoxicating liquors; (2) the manufacture of intoxicating liquors; and (3) the introducing or attempt to introduce into the state of intoxicating liquors.  The offense with which the appellant is charged falls within the third class.  It is his contention that the provision of the constitutional amendment making it a crime to introduce into the

state intoxicating liquors is unconstitutional, as an attempt to regulate interstate commerce.''

We accordingly, in that case, treated the phase of the prohibition amendment affecting the introduction of intoxicating liquors into the state as an attempt to regulate interstate commerce, and held it unconstitutional, except in so far as it received aid from the Webb-Kenyon Act (Act March 1, 1913, c. 90, 37 Stat. 699 [Comp. Stats. 1913, § 8739]), an act of Congress which prohibited ''the shipment or transportation . . . of . . . intoxicating liquor . . . from one state . . . into any other state, . . . which . . . intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state.''

In that case we used the word ''introduce,'' or rather its derivative ''introduction,'' as synonymous with the words ''shipment'' and ''transportation'' found in the Webb-Kenyon Act, and those words, it is readily seen, pertain to intoxicating liquors going ''from one state . . . into any other state.'' We said, at page 519 of 17 Ariz., page 1053 of 154 Pac:

''It being settled that traffic in intoxicating liquor in this state is a crime, it follows that the shipment, transportation or introduction of intoxicating liquor into the state with the intention to sell, barter, exchange, give away or dispose of, divests, under the Webb-Kenyon Act, such intoxicating liquor of its interstate commerce character, and leaves the state free in the exercise of its police powers to denounce such introduction as a crime and to prescribe penalties for its commission. In other words, one who introduces intoxicating liquor into the state with the purpose and intention of violating the laws of the state by disposing of the same may not now interpose the defense that he is engaged in interstate commerce, for the reason that the article that he is handling has been divested of its interstate character by the Webb-Kenyon Act.''

And again, at page 520 of 17 Ariz., page 1053 of 154 Pac.:

''We are of the opinion that, when any person introduces . . . intoxicating liquor into this state with the purpose and intention of violating any law of the state, . . . such person may be punished for his act as of a crime.''

The legal status of intoxicating liquors was made to depend upon the purpose for which it was brought or introduced into the state, that is, if it was brought in for a lawful purpose, no offense against the laws of Arizona was committed, but if it was brought in for an unlawful purpose, that is, for the purpose of traffic, the act became an introduction and a crime.

Upon the construction given to the prohibition amendment by this court in the Sturgeon case, all intoxicating liquor introduced into Arizona "from any other state or territory or foreign country" to be and remain as a part of the property of the state, when introduced for an unlawful use, by virtue of the Webb-Kenyon Act, lost its interstate commerce character and became, at the instant that it crossed the state boundary line, subject to the police power of the state. In that case we held that the introduction of intoxicating liquor into the state from without the state constituted a crime under the prohibition amendment when the introduction was for an unlawful purpose. The effort of the constitutional amendment was to stop intoxicating liquor at the boundary line of the state. The endeavor was to make it impossible for it to enter the state, and we held, in a modified sense, that the popular edict was successful. This construction of our prohibition amendment was made possible only through the aid of the Webb-Kenyon Act, which prohibited the shipment or transportation of intoxicating liquors from one state into any other state to be there used in violation of some law of the state. But for the federal legislation, or in the absence thereof, intoxicating liquors could have been shipped or transported or introduced into Arizona and the state would have been impotent to prevent it. It seems to me that the crime of introducing intoxicating liquors into the state of Arizona is committed at the boundary line of the state, where it is first brought into the state, and that the proper venue of the crime is the county bordering on the state line at that point. Paragraph 806 of the Penal Code, among other things, provides: "Except as herein otherwise provided, the jurisdiction of every public offense is in the county where it is committed."

The facts of this case do not constitute an exception permitting the prosecution of the offender outside of the county in which the crime is committed. The offense is not committed

partly in one county and partly in another. Neither do the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties. One act, as defined by the prohibition amendment and explained by the court in the Sturgeon case, constitutes the offense, and that act is the introduction of intoxicating liquor into the state from outside the state for the purpose or with the intention of violating some law of the state. If intoxicating liquor is introduced into the state from without the state for a lawful purpose, the introduction in that instance is no offense, and while one may thus lawfully introduce intoxicating liquors into the state of Arizona from without the state, he may not thereafter traffic in such liquors and claim immunity from prosecution. If anyone should lawfully bring intoxicating liquor into Arizona and proceed to traffic in it, he would be guilty of a very different offense than that of introducing liquor.

Under a federal statute that made the importation into the United States of any alien woman or girl for the purpose of prostitution, or for any other immoral purpose a felony, the circuit and district courts of the United States have held that the jurisdiction of the offense is at the port where the alien woman or girl is first landed, as at the moment of such landing the offense is fully consummated. This has been the holding, notwithstanding the destination of such alien woman or girl may have been into some interior state of the Union and into another federal district than the one where she was first landed. *United States* v. *Krsteff* (D. C.), 185 Fed. 201; *United States* v. *Lair,* 195 Fed. 47, 115 C. C. A. 49.

In *United States* v. *Capella* (D. C.), 169 Fed. 890, the defendant was charged with having violated the federal statute which made it an offense "that any person who shall attempt, by himself or through another, to bring into or land in the United States by vessel or otherwise, any alien not duly admitted by an immigration inspector or not lawfully entitled to enter the United States." The facts were that the defendant brought a minor child to the United States who was not entitled to enter the United States, landing her first at the port of New York; thereafter he removed her to San Francisco, where he was indicted and tried. It was the contention of the prosecution that the offense with which the de-

fendant was charged was begun in one judicial district and completed in another, and therefore he could be tried in either district, the federal statutes so providing. Answering this argument, the court said:

"The offense charged in the indictment was not one begun at the port of New York, and completed in this district, but it was entirely committed at the port of New York. It was there that the minor child, Pasqualina Ranzoni, was landed in the United States, in violation of the act of February 20, 1907, and the subsequent act of the defendant in bringing the said minor within the jurisdiction of this court is no part of the offense of illegally bringing her into or landing her in the United States."

It seems to me that the offense here charged against the appellant is begun and completed in the county bordering the state line into which the intoxicating liquor is first introduced into the state. It is not committed partly in one county and partly in another. The appellee cites one case from Wyoming which he claims supports the view that the venue was properly laid in Maricopa county. *Patrick* v. *State*, 17 Wyo. 260, 129 Am. St. Rep. 1109, 98 Pac. 588.

Patrick was informed against for violating this statute: "It shall be unlawful for any person to bring into this state any sheep infected with scab or any other infectious or contagious disease, or that have in any manner been exposed to such disease."

The proceedings against Patrick were had in an interior county of the state, and, against the contention of the defendant, the court held that the interior county had jurisdiction. It may be doubted whether the language of the statute will permit such a construction, but granting the correctness of the court's decision on that point, I do not think it authority in this case. The Wyoming statute was clearly within the police power of the state, which power authorizes the state to pass sanitary laws for the protection of life or property within its borders and to prevent persons or animals suffering from contagious or infectious diseases from entering the state. *Reid* v. *Colorado*, 187 U. S. 137–151, 47 L. Ed. 108, 23 Sup. Ct. Rep. 92; *Railroad Co.* v. *Husen*, 95 U. S. 465–472, 24 L. Ed. 527.

The Wyoming law is not an attempt to regulate interstate commerce, nor does it do so, "but," as is said in the Patrick case, "is rather a reasonable and necessary exercise of the police power of the state to exclude from its borders diseased sheep, the introduction of which would endanger the sheep industry of the state." Whereas, the act of introducing intoxicating liquors into Arizona can become an offense only by reason of an interstate shipment being divested of its interstate commerce character by an act of Congress. The Wyoming act finds sanction in the police power of the state only. Ours is dependent for vitality upon co-ordinating congressional legislation.

It is well-settled law that the acts and things alleged in an indictment or information characterize and identify the offense rather than the name ascribed to those acts in the informal part of such instruments. Indeed, the name given is unimportant, and may be entirely disregarded. *People* v. *Phipps,* 39 Cal. 326. The information in this case names the offense charged against the appellant as "the crime of introducing intoxicating liquor into the state of Arizona." That, however, is the only expression in the information that tends affirmatively or otherwise to show that the intoxicating liquor was introduced into the state from without the state. There is no positive or affirmative allegation that the whisky which the appellant is charged to have introduced "into the county of Maricopa, state of Arizona," was brought, shipped, transported or introduced into the state from without the state. If the pleader intended by the allegations of the information to assert that the whisky was introduced into Maricopa county from some point outside of the state, the court would be compelled to take judicial notice that it was first introduced into some other county of the state before it was introduced into Maricopa county. I think that the language of the information fails to show that the liquor was an interstate introduction. Therefore it does not conform with the requirements of section 936 of the Penal Code, in that it is not direct and certain as regards "the particular circumstances of the offense charged," and fails to show facts "necessary to constitute a complete offense." On the other hand, should it be considered that the information states facts sufficient to constitute a public offense, it clearly shows that

the offense was committed in some other county than Maricopa county, and that, therefore, the venue is not properly laid.

For these reasons, I am of the opinion that the judgment of conviction should be reversed and the cause remanded, with directions that the case be dismissed.

On the constitutionality, construction and effect of Webb-Kenyon Act, see note in L. R. A. 1916C, 299.

On proof of *corpus delicti* in prosecution for sale of intoxicating liquors, see note in 68 L. R. A. 55, 70.