[Criminal No. 393.   Filed February 12, 1916.]

[154 Pac. 1050.]

## W. J. STURGEON, Appellant, v. STATE, Respondent.

1. Commerce—Intoxicating Liquors—Interstate Commerce—Prohibition.—The Webb-Kenyon Act (Act Cong. March 1, 1913, c. 90, 37 Stat. 699 [U. S. Comp. Stats. 1913, sec. 8739]), having divested intoxicating liquors of their interstate character, they become subject to the state police power, and Constitution, article 23, section 1, prohibiting the disposal or introduction into the state of intoxicating liquors, is valid, not being in interference with interstate commerce, notwithstanding Congress alone can regulate such commerce.

2. Intoxicating Liquors—Offenses—Introduction into State.—As Constitution, article 23, section 1, prohibiting the sale of intoxicating liquors or the introduction into the state, does not make the drinking of intoxicants an offense, the introduction into the state of intoxicating liquors intended for accused's own use is not an offense, and the fact that they were intended for his own use may be shown as a defense.

3. Indictment and Information—Duplicity—"Bring"—"Introduce." An information charging that accused did unlawfully "bring" and "introduce" intoxicating liquor into the state from outside is not duplicitous as charging the offense of bringing, and the offense of introducing, intoxicating liquor into the state, for in view of

XVII Ariz.—33

Penal Code, section 941, requiring words to be construed in their usual acceptance, the two words must be construed as synonymous, charging the single offense, denounced by Constitution, article 23, section 1, of introducing intoxicating liquor into the state.

4. Indictment and Information—Negative Offenses.—As Constitution, article 23, section 1, prohibiting the bringing into the state of intoxicating liquors, does not specifically except intoxicants intended for personal use, though the bringing of such liquors is not an offense, an information charging the bringing into the state of intoxicants need not negative that they were intended for personal use; that being a matter of defense to be urged.

5. Intoxicating   Liquors — Offenses — Information — Sufficiency. Under Penal Code of 1913, sections 943, 944, requiring words in an information to be construed in their ordinary sense, and providing that no information is insufficient by reason of any defect in form which does not tend to the prejudice of a substantial right of the defendant, an information charging that accused on or about a certain day before the filing of the information did then and there unlawfully bring and introduce into the state, from outside, intoxicating liquors, to wit, one quart of wine, is sufficient to state an offense under Constitution article 23, section 1, prohibiting the introduction into the state of intoxicants, for it apprises accused of the charge against him.

6. Intoxicating Liquors—Offenses—Defenses.—One bringing intoxicants into the state does so at his peril, it being a matter for the jury to determine whether they were intended for his own use.

[As to place of sale of intoxicating liquors shipped C. O. D., see note in Ann. Cas. 1912D, 983.]

APPEAL from a judgment of the Superior Court of the County of Yuma. Frank Baxter, Judge. Reversed and remanded.

Messrs. Wupperman & Wupperman, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. Leslie C. Hardy and Mr. Geo. W. Harben, Assistant Attorneys General, for the State.

Mr. John H. Campbell and Mr. S. L. Kingan, *Amici Curiae.*

PER CURIAM.—The appellant was tried and convicted under an information that charged him with bringing and introducing into the state of Arizona from outside the limits of

said state intoxicating liquor, to wit, one quart of wine. He demurred to the information on the ground that it did not negative that it was introduced for his personal use. The demurrer was overruled. On the trial he offered to prove that he brought the intoxicating liquor into the state for his personal use. This offer of proof was denied by the court. From the judgment of conviction this appeal is prosecuted, the appellant assigning as errors the order overruling his demurrer and the refusal of his offer of evidence of intended personal use. The question, then, as to whether one may introduce into the state of Arizona intoxicating liquors for his personal use, is squarely presented for decision.

The prohibition amendment to the Constitution (article 23, section 1) reads as follows:

"Ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind shall not be manufactured in or introduced into the state of Arizona under any pretense. Every person who sells, exchanges, gives, barters, or disposes of any ardent spirits, ale, beer, wine, or intoxicating liquor of any kind to any person in the state of Arizona, or who manufactures, or introduces into, or attempts to introduce into the state of Arizona any ardent spirits, ale, beer, wine, or intoxicating liquor of any kind, shall be guilty of a misdemeanor and upon conviction shall be imprisoned for not less than ten days nor more than two years and fined not less than twenty-five dollars and costs nor more than three hundred dollars and costs for each offense; provided, that nothing in this amendment contained shall apply to the manufacture or sale of denatured alcohol."

Three crimes are defined and denounced by this section: (1) The traffic in intoxicating liquors; (2) the manufacture of intoxicating liquors; and (3) the introducing or attempt to introduce into the state of intoxicating liquors.

The offense with which the appellant is charged falls within the third class. It is his contention that the provision of the constitutional amendment making it a crime to introduce into the state intoxicating liquors is unconstitutional, as an attempt to regulate interstate commerce. There can be no mistaking the meaning of the language used in the amendment with regard to the introduction of intoxicating liquors; it plainly and clearly attempts to forbid and punish every

person "who . . . introduces into, or attempts to introduce into the state of Arizona" intoxicating liquors.

In *Brown* v. *State, ante,* p. 314, 152 Pac. 578, we had occasion to refer to the source from which our prohibition amendment to the Constitution was taken. It was found to be a rescript, with such modifications as to make it applicable to the state, from the act of Congress regulating trade and intercourse with the Indian tribes.

In *United States* v. *Holliday,* 3 Wall. 407–416, 18 L. Ed. 182, Justice MILLER, in searching for the meaning of the congressional act which we adopted, said:

"The act in question, although it may partake of some of the qualities of those acts passed by state legislatures, which have been referred to the police powers of the states, is, we think, still more clearly entitled to be called a regulation of commerce. 'Commerce,' says Chief Justice MARSHALL, in the opinion in *Gibbons* v. *Ogden* [9 Wheat. 1, 6 L. Ed. 23], to which we so often turn with profit when this clause of the Constitution is under consideration, 'commerce undoubtedly is traffic, but it is something more; it is intercourse.' The law before us professes to regulate traffic and intercourse with the Indian tribes. It manifestly does both. It relates to buying and selling and exchanging commodities, which is the essence of all commerce, and it regulates the intercourse between the citizens of the United States and those tribes, which is another branch of commerce, and a very important one.

"If the act under consideration is a regulation of commerce, as it undoubtedly is, does it regulate that kind of commerce which is placed within the control of Congress by the Constitution? The words of that instrument are: 'Congress shall have power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.' Commerce with foreign nations, without doubt, means commerce between citizens of the United States and citizens or subjects of foreign governments, as individuals. And so commerce with the Indian tribes means commerce with the individuals composing those tribes. The act before us describes this precise kind of traffic or commerce, and therefore comes within the terms of the constitutional provisions."

That feature of our constitutional amendment, therefore, that undertakes to make it a crime to introduce or attempt to introduce intoxicating liquors into the state, under the federal decisions, pertains to commerce, the regulation of which with foreign countries and between the states and with the Indian tribes is exclusively lodged in the Congress.

It has been many times decided by the courts that intoxicating liquors are subjects of interstate commerce to be regulated by congressional legislation, and exempt from state interference. 7 Cyc. 437, and authorities under note 19; *Leisy* v. *Hardin*, 135 U. S. 100, 34 L. Ed. 128, 10 Sup. Ct. Rep. 681; *L. & N. R. R. Co.* v. *Cook Brewing Co.*, 223 U. S. 70, 56 L. Ed. 355, 32 Sup. Ct. Rep. 189.

Until 1890, when the Wilson Act was passed (Act Cong. Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. Stats. 1913, sec. 8738]), the interstate character of intoxicating liquors had been considered and treated as that of other commodities of interstate traffic. Thus, it has been held that a state prohibition law did not reach or affect intoxicating liquors as long as they remained in the original package. *Leisy* v. *Hardin*, 135 U. S. 100, 34 L. Ed. 128, 10 Sup. Ct. Rep. 681. The Wilson Act worked a radical change in the law, and therefore those decisions rendered by the United States courts prior to its enactment are no longer applicable, and need not be considered in determining the power of the state to suppress the liquor traffic. Under the Wilson Act, intoxicating liquors when imported into one state from another immediately upon delivery to the consignee, whether in the original package or not, become subject to the law of the state. As was said in *Delameter* v. *South Dakota*, 205 U. S. 93, 10 Ann. Cas. 733, 51 L. Ed. 724, 27 Sup. Ct. Rep. 447:

''In other words, that Congress, sedulous to prevent its exclusive right to regulate commerce from interfering with the power of the states over intoxicating liquor, by the Wilson Act adopted a special rule enabling the states to extend their authority as to such liquor shipped from other states before it became commingled with the mass of other property in the state by a sale in the original package.''

The Wilson Act did not divest, or attempt to divest, intoxicating liquors of their interstate commerce character further than to make them subject to the local laws at an earlier

date. Prohibition in one state was no impediment, under the Wilson Act, to the shipping or transporting of intoxicating liquors therein, and the interstate traffic in intoxicating liquors, it is well known, continued to thrive and prosper with little abatement in "dry" territory, notwithstanding the Wilson Act.

If it be held that the introduction clause of the amendment is effective, it can only be on account of decided changes wrought in the federal laws in regard to interstate shipments of intoxicating liquors. Before the passage of the Webb-Kenyon Act, under all the decisions, it would be ineffectual, and the question is: How far and to what extent does the Webb-Kenyon Act alter the law as it formerly existed? That act, including its title, passed on March 1, 1913, omitting extraneous words, reads as follows:

"An Act Divesting Intoxicating Liquors of Their Interstate Character in Certain Cases.

". . . The shipment or transportation . . . of . . . intoxicating liquor, . . . from one state . . . into any other state, . . . which . . . intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state, . . . is hereby prohibited." U. S. Stats. 62d Cong., Sess. 3, c. 90.

As to the purpose and meaning of the Webb-Kenyon Act, we fall back upon the opinion of the United States supreme court, as expressed by Justice DAY, in *Adams Express Co.* v. *Kentucky*, 238 U. S. 190–198, Ann. Cas. 1915D, 1167, 59 L. Ed. 1267, 35 Sup. Ct. Rep. 824, 826:

"That the act did not assume to deal with all interstate commerce shipments of intoxicating liquors into prohibitory territory in the states is shown in its title, which expresses the purpose to divest intoxicating liquors of their interstate character in *certain cases*. What such cases should be was left to the *text of the act* to develop. . . .

"It would be difficult to frame language more plainly indicating the purpose of Congress not to prohibit all interstate shipment or transportation of liquor into so-called dry territory, and to render the prohibition of the statute operative only where the liquor is to be dealt with in violation of the

local law of the state into which it is thus shipped or transported. *Such shipments are prohibited only* when such person interested *intends that they shall be possessed, sold, or used in violation of any law of the state* wherein they are received. Thus far and no further has Congress seen fit to extend the prohibitions of the act in relation to interstate shipments. Except as affected by the Wilson Act, which permits the state laws to operate upon liquors after termination of the transportation to the consignee, and the Webb-Kenyon Act, which prohibits the transportation of liquors into the state to be dealt with therein in violation of local law, the subject matter of such interstate shipment is left untouched and remains within the *sole jurisdiction of Congress* under the federal Constitution.'' (Italics ours.)

In *Gherna* v. *State,* 16 Ariz. 344, 146 Pac. 494, we said, concerning the prohibition amendment:

''Evidently the main purpose and controlling principle pervading the amendment is to prohibit the manufacture in Arizona, and to prohibit the disposal thereof to any person in Arizona in any way, of ardent spirits, ale, beer, wine, or intoxicating liquor of any kind. It is not questioned in this case that the state may, in the proper exercise of its police powers, enact such legislation. The power to regulate, restrain, or prohibit whatever is injurious to the public health and morals is universally recognized.''

It being settled that traffic in intoxicating liquor in this state is a crime, it follows that the shipment, transportation or introduction of intoxicating liquor into the state with the intention to sell, barter, exchange, give away or dispose of, divests, under the Webb-Kenyon Act, such intoxicating liquor of its interstate commerce character, and leaves the state free in the exercise of its police powers to denounce such introduction as a crime and to prescribe penalties for its commission. In other words, one who introduces intoxicating liquor into the state with the purpose and intention of violating the laws of the state by disposing of the same may not now interpose the defense that he is engaged in interstate commerce, for the reason that the article that he is handling has been divested of its interstate character by the Webb-Kenyon Act. Intoxicating liquor in the aspect of being ''received, possessed, or kept, or in some way used in a manner prohibited

by the laws of the state to which it is to be, or is in fact, imported,'' is an outlaw and divested of its interstate character and withdrawn from interstate protection at the hands of the federal government. *Southern Express Co.* v. *State,* 188 Ala. 454, 66 South. 115. We quote further from the same case:

"For the reasons above stated, we are of the opinion that interstate commerce cannot, since the passage by Congress of the Webb law, be used as a subterfuge by common carriers or other corporations, firms or persons for having in their possession or for delivering to any other person liquors intended to be used, not for lawful, but for unlawful, purposes in the state. 'That which does not belong to commerce is within the jurisdiction of the police power of the state, and that which does belong to commerce is within the jurisdiction of the United States.' *Peirce* v. *New Hampshire,* 5 How. 504, 12 L. Ed. 256; *In re Rahrer,* 140 U. S. 545, 35 L. Ed. 572, 11 Sup. Ct. Rep. 865. Intoxicating liquors and beverages intended for unlawful use in Alabama are, in so far as the state of Alabama is concerned, since the passage of the Webb bill, not articles of commerce, and cannot claim protection as such.''

What is said by the Alabama court concerning the status of intoxicating liquor in that state fittingly applies and well defines its status in Arizona. We are of the opinion that, when any person introduces or attempts to introduce intoxicating liquor into this state with the purpose and intention of violating any law of the state, such liquor no longer ''belongs to commerce'' and ''is within the jurisdiction of the police power of the state,'' and that such person may be punished for his act as of a crime.

The appellant sought to show by evidence that the liquor which he was charged with introducing into the state was for his personal use, upon the theory that the prohibition amendment to the Constitution does not denounce or define personal use of intoxicating liquors as a crime. He contends that it is not unlawful in this state to have in possession or to drink intoxicating liquors; that the Webb-Kenyon Act does not divest or attempt to divest intoxicating liquors of their interstate character when shipped, transported or introduced into the state from without the state to be possessed or used for a lawful purpose.

Search the prohibition amendment as you will, there is no suggestion or intimation in any form contained therein prohibiting the possession or individual consumption of intoxicating liquors in Arizona. Indeed, it was freely admitted, upon the argument by counsel who appeared as *amici curiae,* that it is not a crime to possess or drink intoxicating liquors in Arizona, and while the attorney general, at least in his brief, insists that the use or possession is a crime, he fails to cite us to a single instance where a prosecution has been begun in any county of the state against any person for drinking intoxicating liquor or having it in his possession. The records of the courts throughout the state evidence many prosecutions for the sale of intoxicating liquors since the prohibition ˙ amendment went into effect. It is common knowledge that personal use has been more or less prevalent throughout the state, and the effort has been, not to punish the user, but the seller thereof. The bootlegger, and not his patrons, have had the attention of the prosecuting officers of the state.

We think it is the consensus of opinion, not only of the legal profession, but of the general public, that it is not a crime to possess or drink intoxicating liquors in this state. This universal and, no doubt, correct construction of the prohibition amendment, may easily account for the lack of effort upon the part of the prosecuting officers of the state to punish for the mere drinking or possession of intoxicating liquors. So far as the enforcement of the prohibitory law is concerned, that this has been the general usage and practical construction of the law by the officers of this state may not be gainsaid, and is so admitted by the attorney general. If it had been made a crime to use and possess intoxicating liquor in this state, its introduction for that purpose would relieve it of its interstate commerce character, so that its denouncement as a crime would fall within the police power of the state. Like sale and barter, then use and possession would be in violation of the laws of the state. The *amici curiae* say in their brief:

"Nor is there any doubt but that the people of the state by their Constitution may prohibit the use of intoxicants within the state."

Although there are some courts holding the contrary view, we are inclined to agree with counsel in this proposition. In *Ex parte Crane,* 27 Idaho, 671, 151 Pac. 1006, decided September 11, 1915, the court upheld a statute of Idaho making "possession" of intoxicating liquors a crime, and gave reasons in support of that judgment that appear to us to be pregnant with common sense and logic. However, it is not a question of what the law might be, but what it is. Counsel further say:

"Its [the Webb-Kenyon law] purpose was to enable the states to meet intoxicating liquors at their borders and to prevent such liquors from becoming a part of the general property of the state."

This proposition may be granted also, but the purpose of the state has so much to do with the effectiveness of the Webb-Kenyon Act as applied to its laws that the Webb-Kenyon Act may have no effect whatever, except as it may coordinate and dovetail with the state legislature concerning the liquor traffic. In other words, if the state takes no action toward suppressing the liquor traffic, the Webb-Kenyon law can have no application; if it does take action, the Webb-Kenyon law comes to its aid to the extent that the state's laws invoke its provisions and no further.

One of the cases most relied upon by the respondent is *State of West Virginia* v. *Adams Express Co.,* 219 Fed. 794, 135 C. C. A. 464. However, the question we have to decide was not before that court, as will be seen from the following quotation: ·

"We are not concerned in this case with the question whether the state legislature or the state legislature and the Congress in conjunction can forbid a citizen to drink intoxicating liquors or purchase them in another state and bring them into the state of West Virginia for his own consumption; but with the very different question whether the state may forbid the sale of liquor in its borders and make the delivery by a carrier a sale at the place of delivery, and whether the Congress can prohibit the transportation in the state by the common carrier of liquor so to be delivered contrary to the law of the state."

The real question involved in the West Virginia case was whether the legislature of that state could change the com-

mon-law rule so as to make the place of delivery in the state
the place of sale. That question was decided by the court in
the affirmative.

*State* v. *United States Express Co.,* 164 Iowa, 112, 145
N. W. 452, was an ''action in equity to enjoin an alleged
liquor nuisance; to enjoin defendant from distributing or de-
livering intoxicating liquors, or aiding in the distribution
. . . thereof, contrary to law, from transporting, conveying,
and carrying, or distributing liquors, either in cars, wagons,
or otherwise, contrary to law, in Wapello county, Iowa. . . .
The defendant answered, pleading in substance that it is a
common carrier, engaged in interstate commerce. . . . '' The
injunction prayed for was granted, but in the course of the
opinion the court said:

''Eliminating, as we must for the purposes of this case, the
question as to an interstate shipment for the personal use of
the buyer and the consignee, there is no room for doubt as to
the proper interpretation of the act.''

*Palmer* v. *Southern Express Co.,* 129 Tenn. 116, 165 S. W.
236, was a case involving the construction of the prohibition
laws of Tennessee in conjunction with the Webb-Kenyon Act.
The court said:

''It is perceived that the thing which the act prohibits is
the interstate shipment or transportation of the liquors men-
tioned therein, when 'intended by any person interested
therein, to be received, possessed, sold or in any manner used,
either in the original package or otherwise, in violation of
any law of the state, etc., into which the shipment is made.'

''It is enough to say, for the disposition of the case before
us, that it does not appear that the liquors shipped were in-
tended to be sold or used in violation of any law of the state;
and therefore the act does not apply to the present contro-
versy. It appears from the facts stated in the bill, confessed
by the demurrer, and agreed to on the record at the hearing
in the court below, that the liquors were purchased for the
personal use of complainant and his family. This was a law-
ful use, and indeed permitted by the statute in question.''

*Adams Express Co.* v. *Kentucky, supra,* was heard in the
court of appeals of Kentucky upon a stipulation:

''That the liquors were intended by said consignees for
their personal use and were so used by them, and were not

intended by them to be sold contrary to law, and were not so sold by them.''

That court, speaking of this stipulation, said:

''This being the purpose for which the liquor was intended to be received, possessed and used, it is clear that the consignees who received from the carrier the liquor did not, in so doing, violate or intend to violate any law of this state, because there is not and never has been any law of this state that prohibited the citizen from purchasing, where it was lawful to sell it, intoxicating liquor for his personal use, or from having in his possession for such use liquor so purchased. . . . 'It therefore appears that the issue in this case really comes down to this: Was the liquor involved in this transaction intended by any person interested therein to be received, possessed, sold or in any manner used in violation of any law of this state? It is shown by the agreed state of facts, when considered in the light of the Constitution and laws of the state, and the opinions of this court, that it was not.' ''

The supreme court of the United States, taking the above-recited facts found in the opinion of the court of appeals of Kentucky as true, made the following deduction:

''It therefore follows that, inasmuch as the facts of this case show that the liquor was not to be used in violation of the laws of the state of Kentucky, as such laws are construed by the highest court of that state, the Webb-Kenyon law has no application and no effect to change the general rule that the states may not regulate commerce wholly interstate.''

The Kentucky prohibitory statute made it unlawful to bring into, deliver or distribute into local option districts intoxicating liquors. It can readily be seen that its features pertaining to interstate commerce are very similar to our constitutional amendment in that regard. The facts stipulated are identical with those that the appellant offered to prove as a defense in this case. The bearing of the Webb-Kenyon Act upon the two cases it may be said is identical. Counsel have not attempted to distinguish this case from the *Adams Express Company Case,* but offer to suggest that, if this court determines that personal use or possession of intoxicating liquors in this state is unlawful, its decision will not be disturbed by the supreme court of the United States. If we had any predilection in the case, it would have to yield to the law.

We must announce the law as we find it, and may not judicially legislate. Legislation is the function of a separate department of the government.

In so far as the decision in *Adams Express Co.* v. *Kentucky* has influenced our determination, we wish it to be understood that it was not the announcement of the law of the highest court of Kentucky, but of the supreme court of the United States, to which we have given most credence. Upon the stipulation in that case that the liquor was shipped into Kentucky for the personal use of the consignees, and such use not being a crime under the laws of Kentucky, neither that court nor the supreme court of the United States could have reached a different conclusion. It was upon the ascertained fact that the liquor imported into Kentucky was to be put to a use recognized as lawful in that state that the highest court of the land held that the prohibition of the Webb-Kenyon Act did not apply, and the decision by the Kentucky court is in accord with and influenced by repeated adjudications on the subject by the federal court.

It is true the court of appeals of Kentucky went further than was necessary in that case, and quoted a *dictum* taken from a prior opinion of that court in which it is observed that under the Constitution of that state the legislature was not competent to ''prohibit the citizen the right of owning or drinking liquor, when in so doing he did not offend the laws of decency by being intoxicated in public.'' We do not go so far in this case. It was not so decided in the Kentucky case, and is not so decided here. We will say, however, that the Idaho court, in a well-considered case based on facts calling for a decision of the question, has held contrary to the *dictum* in the Kentucky case; its decision being based, as we conceive it, upon sound, healthy, and convincing reasons, and supported by a line of decisions.

We have not discussed the constitutionality of the Webb-Kenyon Act, as it was not raised by the appellant. We assume that it is constitutional; it has been so decided to be by many of the state courts and the federal circuit and district courts.

The evil that all liquor laws are directed toward is the drink habit. But two states, so far as we have been able to discover, have taken decisive and drastic steps to that end

by forbidding to their citizens the right to possess or drink intoxicating liquors. These two states are Idaho and South Carolina. The highest court of the former state has held the law a proper exercise of its police power. *Ex parte Crane, supra.* The South Carolina law was passed in 1915 and has not been before the courts to our knowledge. While legislation has been directed to suppress the traffic in liquor, it is apparent that a sale of liquor is in itself harmless; neither can possession hurt anyone—it is the use of it that is deleterious to the individual and society, and thus sanctions prohibiting liquor laws as an exercise of police regulations established by the law-making power for the prevention of intemperance, pauperism and crime.

It not being unlawful in the state of Arizona to have or personally use intoxicating liquor its introduction into the state for personal use is not prohibited by the Webb-Kenyon Act, and the prohibition amendment, in so far as it attempts to interdict its shipment, transportation, or introduction into the state for a lawful purpose, is ineffectual as an attempt to regulate interstate commerce. It follows that the lower court committed error in refusing appellant's offer of evidence to show that he had brought the liquor into the state for his personal use.

The charging part of the information filed by the county attorney is as follows to wit:

"The said W. J. Sturgeon, on or about the 14th day of August, 1915, and before the filing of this information, at and in the county of Yuma, state of Arizona, did then and there willfully and unlawfully bring and introduce into the state of Arizona, from outside the limits of said state, intoxicating liquor, to wit, one quart of wine, in violation of the provisions of the Constitution of the state of Arizona, contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the state of Arizona."

The defendant says that the information is bad for duplicity, because it charges the alleged offense of "bringing" with the offense of "introducing" intoxicating liquor into the state, the word "bring" not appearing in the prohibitory law. In answer to this, it is sufficient to say that the word "introduce" as used in the law is not a technical word. It

is one of ordinary meaning and common acceptation, and is used as such in the constitutional amendment. "Introduce" is a verb transitive, derived from the Latin words "intro," within, plus "ducere," to lead, meaning to lead or bring in. Webster's Dictionary. Introduce: (L. introducere, lead in, bring into practice, bring forward) To lead or bring in, conduct or usher in, as, to introduce foreign produce into a country. Century Dictionary. Introduce: To bring, lead or put in. Standard Dictionary. The words "bring" and "introduce" as used in the information are synonyms. It is a Code provision that:

"The words used in an indictment or information are construed in their usual acceptance in common language, except such words and phrases as are defined by law, which are construed according to their legal meaning." Section 941, Penal Code 1913.

It is urged against the sufficiency of the indictment that it does not negative any exemption of a lawful use to which intoxicating liquor may be put; that under the laws of Arizona it is not unlawful for one to drink intoxicating liquor, or have such liquor in his possession for his individual consumption; therefore the information is obnoxious to a demurrer because it does not negative such possession or lawful use. The constitutional amendment does not in terms relieve any specified acts or persons from the general operation of the prohibitory words of the law, and such not entering into a description of the offense, or as a qualification of the language defining or creating the offense, a negative averment of matter of exemption is not necessary. If an exemption exists, it is a matter of defense which the prosecution need not anticipate. *Ferrell* v. *State*, 45 Fla. 26, 34 South. 220; *Commonwealth* v. *Davis*, 121 Mass. 352; *Commonwealth* v. *Shannihan*, 145 Mass. 99, 13 N. E. 347; *Territory* v. *Burns*, 6 Mont. 72, 9 Pac. 432; *State* v. *Gallagher*, 20 R. I. 266, 38 Atl. 655; *In the Matter of Kate Lieritz*, 166 Cal. 298, 135 Pac. 1129; *People* v. *Dial*, 28 Cal. App. 704, 153 Pac. 970; Bishop's New Criminal Law, 2d ed., pars. 513–631.

The information is not objectionable on this ground. If the point is available at all, it is a matter of defense to be taken advantage of by evidence on the trial of the case. The information is entitled in a court having authority to receive

it. It was returned and presented to the court by the county attorney of the county in which the court was held. The defendant is named, and the offense charged was committed at a place within the jurisdiction of the court, and before the filing of the information. The offense charged is clearly and distinctly set forth in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended, and the offense charged is stated with such degree of certainty as to enable the court to pronounce judgment of conviction according to the right of the case. Under the provisions of the Code, these tests determine the sufficiency of the information. Section 943, Penal Code 1913. The Code further says:

"No indictment or information is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits." Section 944, Penal Code 1913.

From these provisions of the Code, and the views which we have expressed, it follows that the information is sufficient to state a public offense under the constitutional amendment, and the demurrer was properly overruled.

From what has been said it must not be understood that the mere claim that intoxicating liquor has been brought in by one for his personal use renders such a person immune from prosecution. Anyone bringing intoxicating liquor into Arizona from outside the limits of the state does so at his peril. Whether he subjects himself to punishment or not depends on the use to which the intoxicating liquor is intended to be put. If the jury, under appropriate instructions as to what use would be a violation of the law of this state, are convinced beyond a reasonable doubt from all the evidence and circumstances in the case that such intoxicating liquor is intended by any person interested therein to be "received, possessed, sold, or in any manner used" in violation of any law of Arizona, it would be their duty to convict. If the use intended violates no law of this state, then no offense has been committed.

The guilt or innocence of a person so charged would become a question of fact in each case, to be determined as other disputed questions of fact are determined under the law.

The trial court erred to the prejudice of the defendant in rejecting the testimony offered as to the use to which he intended to put the liquor he is charged with unlawfully bringing into the state. The judgment of conviction must therefore be reversed and the cause remanded, with directions to grant the defendant a new trial.

Before concluding, it may be properly observed that, so long as the law accords to the citizen the privilege of possessing and using intoxicating liquors for his individual consumption, this privilege may not be used as a license to violate the law by invoking that privilege as a subterfuge for an illicit introduction or use, nor should he consider it an invitation to pass the danger line lest he find himself wrecked, for the way of the transgressor is hard.

Reversed and remanded.

On the effect of removal of constitutional objections to state statute regarding intoxicating liquor, see note in 49 L. R. A. (N. S.) 349.