[Criminal No. 399.   Filed December 22, 1916.]

[161 Pac. 881.]

FRANCIS BERT AARON, Appellant, v. STATE, Respondent.

1. INTOXICATING LIQUORS—OFFENSES—INTRODUCING LIQUOR INTO STATE. Under the constitutional amendment prohibiting the introduction of whisky into the state for sale, one aiding and assisting the principal in the commission of the offense by driving an automobile hired by the principal, if knowing that he was assisting the principal in bringing the whisky into the state, or if having reason to know and making no investigation or inquiry, would be guilty of an offense; as, though it might be impossible for him to definitely ascertain the purpose for which the principal was bringing liquor into the state, he should at least have made some inquiry into such purpose.

2. INTOXICATING LIQUORS — OFFENSES — INTRODUCTION INTO STATE. — Where the state has shown an introduction of intoxicating liquors in violation of the constitutional prohibition amendment, it has made out a *prima facie* case authorizing a conviction of the person or persons introducing it, and such person, to escape conviction, must successfully and satisfactorily show that the liquor was introduced for a lawful purpose.

APPEAL from a judgment of the Superior Court of the County of Cochise.   Alfred C. Lockwood, Judge.   Affirmed.

Mr. R. N. French, Mr. J. C. Erwin, Mr. Reese M. Ling, and Mr. W. G. Gilmore, for Appellant.

Mr. Wiley E. Jones, Attorney General, Mr. Geo. W. Harben, Assistant Attorney General, Mr. John F. Ross, County Attorney, and Mr. Bruce Stephenson, Deputy County Attorney, for the State.

CUNNINGHAM, J.—The appellant is charged with having introduced whisky into the state of Arizona from the state of New Mexico, in violation of the constitutional prohibition amendment, and was convicted.   From the judgment of conviction the defendant has appealed.

The facts disclosed by the evidence are as follows: That on the afternoon of October 22, 1915, one Henry J. Brown employed Benson & Moody to carry him by automobile from Douglas, Arizona, to Rodeo, New Mexico, for an agreed fare of $35; that the accused was an automobile driver in the employ of said Benson & Moody, and as such driver and employee made the said agreement for his employers, Benson & Moody, with said Brown; that before said agreement was made the accused approached Brown in a poolroom at Douglas, and, whispering, suggested that that night would be a good time to go after liquors, for the reason three of the local officers were out of town (accused denies that he made any suggestion whatever, at any time or place, to Brown) ; that immediately after the accused made the alleged suggestion aforesaid the accused went with Brown to a bank in Douglas and assisted Brown to get into the bank, the time being after banking hours, and the doors of the bank being closed; that in the bank Brown received for his personal check on the bank $150 in cash, and, with the money in his possession, the trip to Rodeo, New Mexico, was commenced. Arriving at Rodeo, the machine was stopped near the front door of a saloon. The parties traveling in the machine, including the accused, a friend of his, and Brown, left the machine, and Brown bought twelve cases of whisky. Brown and Al Moore, an employee of the saloon, carried the cases from the warehouse to the machine, and the accused packed the cases in the machine. The accused denies that he packed the cases in the machine, and testifies that he had no knowledge that the cases were in the machine until he went from the saloon to the machine preparatory to starting on the return trip to Douglas. The cases of whisky were covered with a lap robe, and the friend of the accused lay down on the boxes and went to sleep. Brown occupied a seat in the car beside the driver, but did not inform the accused of his (Brown's) intention to bring whisky in the automobile from Rodeo to Douglas. The accused drove the automobile from Douglas to Rodeo and return. The route followed on this entire trip was the "Borderland Highway." This highway crosses the Arizona-New Mexico state line about two miles west from Rodeo. On the return trip, and at a point in Arizona known as Silver Creek, about fifteen miles east from Douglas, and between 12

and 1 o'clock that night, the officers stopped the automobile, and, finding the twelve cases of whisky in the machine, arrested the occupants of the car, charging them with having unlawfully introduced intoxicating liquors into the state. To this charge Brown entered a plea of guilty.

After Brown had entered his plea of guilty, he testified for the state in this cause. He testified that he bought the whisky in question, and was taking it to Douglas for the purpose of selling it; that the accused had no interest whatever in the whisky; and that witness would not swear that the accused was informed by witness that he was going after whisky. The whisky was in the car, but under the care of Brown all the time from the time it was loaded at Rodeo until the officers took it at Silver Creek. The accused was occupied in driving the car.

This evidence, considered in the most favorable light possible to the prosecution, resolving all doubts in favor of the state, may be said to establish the following facts: That Henry J. Brown made a trip from Douglas, Arizona, to Rodeo, New Mexico, for the purpose of buying whisky, and to return with the whisky to Douglas for the purpose of selling it in violation of law; that in driving the automobile conveying Brown from Douglas to Rodeo, and returning from Rodeo to Silver Creek conveying Brown and Brown's whisky, the accused was aiding Brown to introduce whisky into the state; and that the accused knew Brown's purpose in making the trip was to purchase whisky and bring it back with him in the automobile to Douglas.

The introduction of whisky into Arizona from the state of New Mexico for the purpose of selling such whisky is an offense against the laws of Arizona, because the sale of whisky in Arizona is a violation of law. In order that the act of introducing whisky into Arizona be criminal, the act must be accompanied by a criminal intent or intention to make an unlawful use of the liquor introduced within Arizona.

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence." Paragraph 20, Penal Code of 1913.

In the offense of the introduction of intoxicating liquors into this state, the criminal intent essential to the crime, the intent that must jointly operate with the act of passing the

liquors into the state, is the purpose for which the liquors are intended to be used in the state. Such intent or intention must be determined by the jury from the circumstances connected with the act of passing the prohibited liquors into the state. This court has decided that the importation of intoxicating liquors into the state for a lawful purpose is no crime (*Sturgeon* v. *State,* 17 Ariz. 513, 154 Pac. 1050), and that the question whether the accused brought the intoxicating liquors into the state for a lawful purpose is one of fact for the jury to determine (*Stansbury* v. *State,* 17 Ariz. 535, 155 Pac. 301). Consequently the knowledge possessed by one who aids and assists another in bringing intoxicating liquors into the state, as to the purpose for which the liquor is brought into the state, is the controlling factor connecting such accomplice with the crime, if crime it be. His knowledge of the fact that he is aiding and assisting to bring intoxicating liquors into the state at the time he renders aid and assistance may or may not be important. If he has no fair means of knowing the nature of the articles he assists to bring into the state, then he cannot be charged with entertaining a criminal intent. If he knows he is aiding and assisting to bring intoxicating liquors into the state, the jury must determine from all the circumstances connected with the act whether his intention in so aiding and assisting was to aid and assist another to take the liquors into the state for an unlawful purpose. The intention to simply aid and assist another to transport whisky into Arizona is in itself no criminal intention, but the acts of aiding and assisting another to transport whisky into Arizona for the purpose of selling it, with a knowledge or means of knowledge that the other intended to use the whisky for such purpose, charges the accomplice with participation in the criminal intent entertained by the principal, and makes the accomplice a principal in the offense.

With this understanding of the law of the offense involved, and the duties of the jury in such cases, I will examine the instructions of the court to ascertain whether the court committed any prejudicial error in such instructions.

The court, among other things, instructed the jury as follows:

"The jury are further instructed that under the prohibition laws and the Constitution of the state of Arizona a defendant

found in the possession of liquors, the sale or importation of which is prohibited under the said laws and Constitution of the state of Arizona, is presumed by law to have legally acquired possession of said liquor, and in order to convict such defendant of a violation of the said prohibition laws and Constitution of the state of Arizona, the burden is on the state to prove that the defendant came into possession of said liquors in a manner contrary to law and with intent to commit the offense charged in the information.

"The jury are further instructed that in this case, in order to convict the defendant of the criminal offense charged in the information, they must believe from the evidence, to the exclusion of a reasonable doubt, that the defendant introduced the liquor in the information specified, contrary to law and with intent to commit the offense with which he is charged in the information.

"The court further instructs the jury that while, under the laws of the state of Arizona, all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, shall hereafter be prosecuted, tried and punished as principals, the defendant, in order to be convicted as such principal for aiding and abetting the commission of the offense in the information charged, must have known at the time of his aiding and abetting the commission of said offense that said offense was being or would be committed, and that the defendant knowingly aided and abetted in the commission of said offense with intent that the said offense be committed. . . .

"You are instructed that if you believe from the evidence, beyond a reasonable doubt, that the defendant, at the time he brought said liquor into the state of Arizona, knew that he was so bringing in liquor, he is guilty of the offense charged in the information, regardless of the question as to whether he owned the liquor, or purchased it or suggested its being brought into the state, but if, as a matter of fact, he did not know the contents of the automobile and that it contained intoxicating liquor at the time he drove said automobile from the state of New Mexico into the state of Arizona, you must find him not guilty. You may judge as to whether or not the defendant did actually know the contents of the automobile

so far as intoxicating liquor is concerned from all the evidence in the case. . . . "

The jury, having been instructed, retired, and later returned into court for the purpose of having read to them the evidence of a certain witness, and for further instructions. The desired evidence was read to the jury from the reporter's notes. Then the court asked:

"What was the other question?

"The Foreman: The jury desire to know in regard to assisting in bringing liquor into the state of Arizona knowingly and willingly.

"The Court: The court will instruct the jury on that point that, if a man assists in bringing the liquor into the state of Arizona, knowing what he is bringing in, it is a violation of the law. If, as a matter of fact, he does not know what it actually is he is bringing in, does not know that it is intoxicating liquor, he does not violate any law. In other words, the mere bringing in or assisting in bringing in is not sufficient unless the man knew what he was bringing in. On the other hand, if he did know what he was bringing in, then, if he renders any assistance whatever to the bringing, it would be a violation of law, . . . and it is for you to decide, as a matter of fact in this case, whether the defendant knew what he was bringing in, and you may decide that he knew that from any one of a dozen different things, or you may decide that he did not know. The knowledge is purely a question of fact for the jury, and you are to answer that question after taking all of the evidence into consideration, and state whether you are satisfied beyond a reasonable doubt and to a moral certainty that the defendant did know that he was bringing in intoxicating liquor into the state of Arizona. If you are satisfied beyond a reasonable doubt in your own mind that the defendant knew it, no matter how he got that knowledge, then you would find him guilty. On the other hand, if you are not satisfied beyond a reasonable doubt that the defendant knew that he was bringing whisky in, then you would find him not guilty."

When the court had given the jury the last-mentioned instructions, in answer to the jury's request, the jury again retired, and thereafter returned their verdict finding the defendant guilty.

These instructions clearly make the existence of a mere conscious act all that is required in law to constitute the offense charged. . The motive prompting the act is not included as at all essential to crime. In other words, the instructions, fairly understood, say that the mere act of bringing whisky into the state for any purpose is a violation of law, unless it is unconsciously brought in, and that the purpose for which the whisky is brought in is not in the least important. Such view of the law is erroneous.

Under the rule mentioned in *Stansbury* v. *State, supra,* the defendant, by these erroneous instructions, was deprived of the right of having the jury determine the intent, the purpose, for which the whisky was introduced into the state.

Under the conceded facts the accused was concerned in the commission of the alleged offense only by reason of the assistance he gave to Brown. This assistance must have been rendered by the accused with an intention to carry out Brown's unlawful purpose. Such intent or intention must be determined from the circumstances connected with the offense. Paragraph 21, Penal Code of 1913. If the circumstances in evidence justified the inference that Brown and the accused performed the act with a community of unlawful purpose, the existence of which fact is essential to a conviction of the accused (12 Cyc. 188, and cases cited in the notes thereto; *People* v. *McMurray,* 4 Park. Cr. R. (N. Y.) 234), the instructions did not permit the jury to determine that fact, but required a conviction in the absence of that fact. In this respect the instructions are erroneous.

The foregoing instructions contain other patent defects in stating the law, but in view of the errors pointed out further discussion becomes unnecessary.

I am of the opinion that the judgment should be vacated and the cause remanded, with instructions to grant a new trial.

ROSS, C. J. (Dissenting).—I reget that I cannot agree with the reasoning set forth nor the conclusions of Justice CUNNINGHAM in the foregoing opinion.

The evidence conclusively establishes the status of defendant's employers, Benson & Moody, as that of common carriers for hire. The defendant was the active agent in making the contract of carriage with the owner Brown, as also in its execution. The evidence also conclusively shows that Brown in-

troduced twelve cases of whisky from Rodeo, New Mexico, into Arizona, under such contract of carriage, for the purpose of selling it in Arizona, and that he thereafter pleaded guilty to the charge of unlawfully introducing it. The defendant aided and assisted the principal, Brown, in the commission of the offense. The only question, it seems to me, is: Did he knowingly participate in its commission, or was he, as he would have one believe, ignorant of the character of his load from Rodeo, New Mexico, into Arizona? It certainly would strain to the breaking the credulity of the most gullible juror to ask him to believe defendant's story that he did not know that his automobile was loaded with whisky at Rodeo to be conveyed thence into Arizona. But, be that as it may, the court told the jury if they found such to be the fact, they should acquit.

Under the prohibition amendment, as it existed at the time, it was not unlawful for Brown to bring into Arizona from New Mexico intoxicating liquor for his personal use. This batch was not, however, for his personal use, and the defendant would have to be more confiding and unsophisticated than the record shows him to be before I would believe he thought so. If his story is to be believed, he simply shut his eyes, suppressed his smell, and likewise failed to "use a little wine for his stomach's sake." He exercised no care nor circumspection; he asked no questions. I think if defendant knew that he was assisting Brown to bring the whisky into Arizona, or that he had reason to know and made no investigation or inquiry, he broke not only the letter of the law but its spirit. *Adams Express Co.* v. *Commonwealth,* 160 Ky. 66, 169 S. W. 603. As is said in one case:

"Common carriers ought to obey the law just like other people, not in merely keeping its letter while breaking its spirit, but keeping both letter and spirit under such circumstances as other people are expected to do." *Adams Express Co.* v. *Commonwealth,* 129 Ky. 420, 18 L. R. A. (N. S.) 1182, 112 S. W. 577.

This language was used in reference to an express company and its duty to exercise care in accepting shipments of intoxicating liquor into dry territory. I think it equally applicable to individuals and to agents of express companies. While it might be impossible for a carrier to definitely ascertain the

XVIII Ariz.—25

purpose for which the shipper was introducing intoxicating liquors into Arizona, he could at least make some inquiry into the purpose. This the defendant did not do.

In the Sturgeon case (17 Ariz. 513, 154 Pac. 1050), it was decided that one who would escape criminal punishment for introducing intoxicating liquors into the state must successfully and satisfactorily establish that the liquor was introduced for a lawful purpose. It was there decided that it was not necessary in the information or indictment to allege that it was not brought in for personal use; that being a matter of defense. Under this rule, when the prosecution has offered proof of an introduction of intoxicating liquors into the state, it has made out a *prima facie* case authorizing a conviction of the person or persons who introduced the liquor, and, it having been proved that defendant and Brown acted together in the introduction of the liquor in question, a *prima facie* case was made, and that *prima facie* case was not overcome. Defendant's only defense was that he unconsciously participated in the transportation of the liquor from Rodeo, New Mexico, into Arizona, and this issue was submitted to the jury under instructions as favorable as he was entitled to, according to my view.

I think the judgment of the lower court should be affirmed.

FRANKLIN, J.—I concur in affirming the judgment and in the views expressed by Chief Justice ROSS.