STATE, RESPONDENT, *v.* LEWIS, APPELLANT.

(No. 5,272.)

(Submitted May 26, 1923. Decided June 12, 1923.)

[216 Pac. 337.]

*Criminal Law—Intoxicating Liquors — Maintaining Common Nuisance—Possession of Liquor—Shifting Burden of Proof to Defendant—Constitutional Law.*

Intoxicating Liquors—Maintaining Common Nuisance—Possession of Liquor—Shifting Burden of Proof to Defendant—Proper Instruction.
1. *Held,* in a prosecution under the Prohibition Act for maintaining a common nuisance, that an instruction in the language of section 11079, Revised Codes, shifting the burden of proof to defendant to show that liquors found in his possession were lawfully acquired, possessed and used, was correctly given.

Same—Possession—Power of Legislature to Shift Burden of Proof to Defendant.
2. The legislature may prescribe that which shall be *prima facie* evidence of guilt and shift to the defendant the necessity of satisfactory explanation, in the absence of express constitutional inhibition; hence, there being no such inhibition in the Constitution, it had the power to provide in section 11079, Revised Codes of 1921, that "in any action"—thus including both criminal as well as civil actions—for a violation of the Prohibition Act the burden shall be upon the defendant to prove that liquor in his possession was lawfully acquired, possessed and used.

Appeal from *District Court, Hill County; Charles A. Rose, Judge.*

MIKE LEWIS was convicted of maintaining a common nuisance by conducting a place where intoxicating liquors were sold, and appeals from the judgment of conviction. Affirmed.

*Mr. Victor R. Griggs,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. A. F. Lamey,* County Attorney of Hill County, submitted a brief;

1. Validity of statute placing on defendant burden of proof of lawful possession of liquor, see notes in 1 L. R. A. (n. s.) 626; 2 L. R. A. (n. s.) 1007; L. R. A. 1915C, 716.

*Mr. Frank Woody,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

The defendant, Lewis, was charged by information with the crime of maintaining a common nuisance by conducting and maintaining "a place where intoxicating liquors were sold, kept and bartered." Upon his plea of not guilty, he was tried by a jury which found him guilty as charged, leaving punishment to be fixed by the court. He was sentenced to thirty days' imprisonment in the county jail, and fined $250. His appeal is from the judgment.

The information is predicated on the provisions of section 11066 of the Revised Codes of 1921, whereby any place where intoxicating liquor is kept or sold in violation of the Prohibition Act is declared to be a common nuisance, and any person maintaining same is declared to be guilty of a misdemeanor, and upon conviction thereof, subject to a fine of not less than $100 nor more than $500 and imprisonment for not less than 30 days nor more than six months. It is admitted that the defendant maintained "The Bank Saloon" in the city of Havre at the time of the offense charged, and the proof is abundant that intoxicating liquors were there sold by the defendant and his servants. The conflict in the evidence was by the jury resolved against the defendant and the adequacy of the proof to warrant the verdict is not challenged. From our examination of the record, we think the evidence was entirely sufficient to warrant the jury's conclusion.

But one question is presented, *viz.:* Was it error for the [1] court to give the following instruction to the jury: "You are instructed that the possession of liquors by any person not legally permitted under the law to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the provisions of law, but it shall not be unlawful to possess liquors in one's private dwelling

while the same is occupied and used by him as his dwelling only, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his *bona fide* guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used.''

The instruction is attacked because it shifts the burden of proof to the defendant to show that liquors found in his possession were lawfully acquired, possessed and used. The instruction simply follows the plain language of the statute. (Sec. 11079, Rev. Codes 1921.) This brings us to a consideration of the question whether it is within the legislative power to thus shift the burden of proof in a criminal prosecution.

Defendant's objection to the court's instruction assumes that the statute was intended to apply in criminal prosecutions; and this being so, it is argued that it is beyond the power of the legislature to shift the burden of proof upon the defendant. The crime alleged is that of maintaining' a nuisance, and section 11066, defining this class of nuisance, states the ingredients of the offense to be (1) a place where (2) intoxicating liquor is (3) manufactured, sold, kept, or bartered, (4) in violation of the Act. The state introduced ample evidence to prove each element of the offense charged. While the state relied on section 11079 as indicated by the court's instruction to supply the element of guilty intent, yet as appears from the evidence, it did not rest its case on the mere naked possession of intoxicating liquor. Under the facts, the instruction was entirely unnecessary.

Section 11079 is a part of Chapter 9 of the Laws of the Extraordinary Session of 1921, and is an exact replica of section 33 of Title 2 of the National Prohibition Act (41 Stats. L. 305 [Fed. Stats. Ann. (1919), p. 197; U. S. Comp. Stats. (1919), sec. 2678]), which became a law October 28, 1919, part thereof becoming effective forthwith as a war measure and the remainder upon proclamation of the Eighteenth Amendment,

January 16, 1919. Chapter 9, *supra*, repealed our first state-wide prohibition law enacted by the people on referendum at the general election in November, 1916 (Chap. 39, Laws 1915; Chap. 143, Laws 1917, and Chap. 175, Laws 1917), constituting the Enforcement Act provided to carry out the policy of state prohibition. The Enforcement Act was passed after March 5, 1917, but long in advance of, the effective date of our First Prohibition Act (December 31, 1918), and accompanied the latter in its operation. Thus, while there is evidence to indicate that Chapter 9, *supra*, is an exercise of the state's police power to effectuate the operation of the Eighteenth Amendment as the supreme law of the land, our legislature having ratified that amendment (February 20, 1917, H. J. R. No. 2, Laws of Extraordinary Session 1918, p. 71), it is clear that Chapter 9 must be regarded as a special Act expressive of the independent determination of our people to suppress the liquor traffic in all of its many ramifications. The Eighteenth Amendment has given tremendous emphasis to prohibition as a national policy, but it is not the source of the state's power.

Mr. Chief Justice Taft has made this plain in the case of *United States* v. *Lanza*, 260 U. S. 377, 43 Sup. Ct. Rep. 141, as follows: "To regard the amendment as the source of the power of the states to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. Save for some restrictions arising out of the federal Constitution, chiefly the commerce clause, each state possessed that power in full measure prior to the amendment, and the probable purpose of declaring a concurrent power to be in the states was to negative any possible inference that in vesting the national government with the power of country-wide prohibition, state power would be excluded. In effect the second section of the Eighteenth Amendment put an end to restrictions upon the state's power arising out of the federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the amendment took from the states all power to authorize

acts falling within its prohibition, but it did not cut down or displace prior state laws not inconsistent with it. Such laws derive their force, as do all new ones consistent with it, not from this amendment, but from power originally belonging to the states, preserved to them by the Tenth Amendment, and now relieved from the restriction heretofore arising out of the federal Constitution. * * * We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."

As an enactment of the state to express and subserve domestic policy, Chapter 9 is to be tested by our constitutional limitations, and construed in harmony with existing laws. Thus viewed, no constitutional restriction is overstepped nor personal guaranty denied the defendant. The word "action" as used in the section must be held to include criminal actions. The words "action," "prosecution," and "proceeding" are indiscriminately employed in the Act. "Actions" under our Code are of two kinds, *viz.,* civil and criminal (sec. 8997, Rev. Codes 1921), and a "criminal action" is defined as "the proceeding by which a party charged with a public offense is accused and brought to trial and punishment." (Sec. 11608.) But wholly without this intrinsic aid, the scope of language employed, *viz.,* "the burden of proof shall be upon the possessor in *any action* concerning the same" [the possession of intoxicating liquor], overcomes suggestion of partial application. To attempt exclusion of criminal actions would be to thwart obvious intent.

We would have escaped much labor in this case had we been able to limit the use of the word "action" to a civil action, as has been done in construing the identical language contained in

the Volstead Act. (Sec. 33, 41 Stats. L. 305 [Fed. Stats. Ann. (1919), p. 197; U. S. Comp. Stats. (1919), sec. 2678]; *United States* v. *Cleveland* (D. C.), 281 Fed. 249.)

There can be no doubt respecting the general power of the [2] legislature to prescribe rules of evidence to be observed in judicial tribunals, it being restricted only by constitutional limitations and guaranties. (10 R. C. L. 862; 12 C. J. 823.) Professor Wigmore, in his splendid treatise on Evidence (section 7), says: ''There can be no vested right in a rule of evidence. Those rules are merely methods for ascertaining facts.'' The general rule underlying all of the authorities upon this question is that the legislature may prescribe that which shall constitute *prima facie* evidence of guilt, and shift to the defendant the necessity of satisfactory explanation, in the absence of express constitutional inhibition.

The Constitution of Montana contains no guaranty that the burden of proof may not be shifted in a criminal action, unless it may be considered as implied in the due ''process of law clause'' (sec. 27, Art. III) or the guaranty that a person accused of crime shall not be compelled to be a witness against himself (sec. 18, Art. III). Neither of these clauses would appear to prohibit the enactment of such rule of evidence. (Thayer's Treatise on Evidence, Chap. 8, p. 313, and Appendix A, p. 539; Chap. 9, p. 353, and Appendix B, p. 551.)

The rule is thus stated by Professor Jones in ''The Blue Book of Evidence,'' by Horwitz (vol. 1, sec. 12c) : ''The idea that the presumption of innocence has become in this country a constitutional right has never taken any serious hold of the people. It has nevertheless been urged, especially with regard to such legislation as casts any onus on the accused, that the interference with his right to the presumption of innocence was much in the nature of an attack on the divine right of kings in olden time. It has been repeatedly held that the legislature has the right to declare what shall be presumptive or *prima facie* evidence of any fact. So long as the legislature, in prescribing the rules of evidence in any class of cases, leaves a party a fair

opportunity to establish his case or defense, and give in evidence to the court or jury all the facts legitimately bearing on the issues in the cause to be considered and weighed by the tribunal trying the same, its acts are not unconstitutional. In all statutory crimes it is competent for the legislature to say that certain acts, proven by the commonwealth, shall be sufficient to make out a presumptive case against the accused, and cast the burden of proof upon him, provided the burden is not cast upon him to prove his innocence, without first requiring the commonwealth to prove some material fact or circumstance conducing to prove the guilt of the accused.''

Mr. Justice Holloway, speaking for this court, said: ''It is the general rule in criminal cases that every presumption in favor of the defendant's innocence shall be indulged until the evidence establishes his guilt beyond a reasonable doubt; but the rules of evidence are subject to legislative control, except in so far as it is restrained by constitutional limitations (1 Wigmore on Evidence, sec. 7), and so long as the defendant is secured a fair and impartial trial.'' (*State* v. *Pippi,* 59 Mont. 116, 195 Pac. 556.)

And for the crime of murder, under legislative rule established, it has long been the settled practice in Montana, the homicide having been proven, to shift to the defendant the burden of proving circumstances of mitigation or to justify or excuse him. (Sec. 33, p. 182, Crim. Prac. Acts, Bannack Stats. (1864), and carried forward by re-enactments, now sec. 11980, Rev. Codes of 1921; *Territory* v. *Edmonson,* 4 Mont. 141, 1 Pac. 738; *State* v. *Fisher,* 23 Mont. 540, 59 Pac. 919; *State* v. *Felker,* 27 Mont. 451, 71 Pac. 668; *State* v. *Leakey,* 44 Mont. 354, 120 Pac. 234; *State* v. *Halk,* 49 Mont. 173, 141 Pac. 149; *State* v. *Powell,* 54 Mont. 217, 169 Pac. 46; *State* v. *Kuum,* 55 Mont. 436, 178 Pac. 288; *State* v. *Colbert,* 58 Mont. 584, 194 Pac. 145.)

Similar statutes providing that the possession of intoxicating liquors, under certain circumstances, may be received as evidence of the possessor's guilt of particular offenses, have generally been upheld. (*State* v. *Harris,* 101 Or. 410, 200 Pac.

926; *State* v. *Harding,* 108 Wash. 606, 185 Pac. 579; *State* v.
*Blackwell,* 103 Wash. 337, 174 Pac. 646; *State* v. *Sheppard,* 64
Kan. 451, 67 Pac. 870; *Durfee* v. *State,* 53 Neb. 214, 73 N. W.
676; *Parsons* v. *State,* 61 Neb. 244, 85 N. W. 65; *Caffee* v. *State,*
11 Okl. Cr. 485, 148 Pac. 680; *Sellers* v. *State,* 11 Okl. Cr. 588,
149 Pac. 1071; *Bell* v. *State,* 62 Tex. Cr. 242, Ann. Cas. 1913C,
617, 36 L. R. A. (n. s.) 98, 137 S. W. 670; *Aaron* v. *State,* 18
Ariz. 378, 161 Pac. 881; *State* v. *Schmitz,* 19 Idaho, 566, 114
Pac. 1; *State* v. *Theodore* (Mo. Sup.), 191 S. W. 422; *State* v.
*Rawlings,* 232 Mo. 544, 134 S. W. 530; *State* v. *Bunker* (Mo.
App.), 206 S. W. 399; *Gillespie* v. *State,* 96 Miss. 856, 51 South.
811; *True* v. *Hunter,* 174 Iowa, 442, 156 N. W. 363; *Nies* v.
*Jepson,* 174 Iowa, 188, 156 N. W. 292; *State* v. *Jarvis* (Iowa),
165 N. W. 61; *Nies* v. *District Court,* 179 Iowa, 326, 161 N. W.
316; *State* v. *Tincher,* 81 W. Va. 441, 94 S. E. 503; *Dees* v.
*State,* 16 Ala. App. 97, 75 South. 645; *Ex parte Woodward,* 181
Ala. 97, 61 South. 295; *Southern Express Co.* v. *Whittle,* 194
Ala. 406, L. R. A. 1916C, 278, 69 South. 652; *State* v. *Barrett,*
138 N. C. 630, 1 L. R. A. (n. s.) 626, 60 S. E. 506; *State* v.
*McIntyre,* 139 N. C. 599, 52 S. E. 63; *State* v. *Wilkerson,* 164
N. C. 431, 79 S. E. 888; *State* v. *Russell,* 164 N. C. 482, 80 S. E.
66; *State* v. *Randall,* 170 N. C. 757, Ann. Cas. 1918A, 438, 87
S. E. 227; *Carter* v. *Commonwealth,* 123 Va. 810, 96 S. E. 766;
*Griffin* v. *State,* 142 Ga. 636, Ann. Cas. 1916C, 80, L. R. A.
1915C, 716, 83 S. E. 540; *Kunsberg* v. *State,* 147 Ga. 591, 95
S. E. 12; see, also, *Hauser* v. *State,* 6 Ala. App. 31, 60 South.
549; *Ogden* v. *State,* 15 Ala. App. 9, 72 South. 587; *State* v.
*Seaboard Air Line Ry.,* 169 N. C. 295, 84 S. E. 283.)

This court has recently had occasion to consider the very sec-
tion of our statute upon which the court's instruction is based,
and our present Chief Justice, speaking for the court, declared:
"It thus appears clear that in an information or indictment for
unlawfully having possession of intoxicating liquor it is not
necessary to allege that the defendant is not within any of the
exceptions recognized by the statute. If the defendant relies
upon any of the exceptions as a defense, the burden is upon

him to establish it.'' (*State* v. *Griebel*, 65 Mont. 390, 211 Pac. 331.)

The statute may be by some considered drastic and a great deviation from fixed notions as to the rights of our citizens. However, we are not concerned with the wisdom or policy of the lawmakers. If it be found desirable to amend, modify or repeal the rule, it is within the legislative prerogative.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.