# CHARLESTON.

## STATE v. TINCHER.

Submitted November 13, 1917.  Decided November 27, 1917.

1. CONSTITUTIONAL LAW—*Rules of Evidence—Legislative Power.*
   A legislature has the power to prescribe rules of evidence and thereby declare what proof may be admitted and the effect it shall have when admitted, the only restriction being that the rules shall not interfere with the excercise of any natural or common law right of the accused or rights guaranteed to him by the constitution. (p. 443).

2. SAME—*Rules of Evidence.*
   There is no such violation or infringement in an act regulating or forbidding the manufacture, storage or sale of intoxicating liquors in this state, and declaring that possession thereof otherwise than as authorized by law shall be prima facie evidence of sale of the same in violation of the provisions of, the act. (p. 443).

81 W. Va.

3. INTOXICATING LIQUORS—*Sale—Evidence—Sufficiency.*

The unlawful possession of liquors found concealed in a building searched therefor, as authorized by §9, ch. 32A, Code 1916, under such a statute is prima facie evidence of sale, and, unexplained, alone sufficient to support a conviction. (p. 447).

4. SAME—*Offense—Presumption—Statute.*

But in a prosecution under an indictment charging a violation of section 3 of that chapter, the accused may by any competent evidence rebut the presumption arising from the possession of liquors seized under the provisions of section 9, and must do so to escape conviction under such indictment. (p. 447).

5. SAME—*Unlawful Sale—Evidence.*

In a prosecution for an unlawful sale of such liquors at the residence of the accused in a small village, proof of disorderly or riotous conduct by intoxicated persons assembled or passing along a public street in front of but not upon his premises is inadmissible, unless the testimony discloses some immediate or causal connection between such conduct and the unlawful possession or sale of liquors by the accused, or facts from which such relation may reasonably be inferred. (p. 448).

Error to Circuit Court, Fayette County.

Lillian Tincher was convicted of the unlawful sale of liquors at her residence and she brings error.

*Reversed, verdict set aside, remanded for new trial.*

*Dillon & Nuckolls,* for plaintiff in error.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for the State.

LYNCH, PRESIDENT:

At the April term in 1917 of the criminal court of Fayette county, Lillian Tincher was convicted of the unlawful sale of liquors at her residence in a village of some five hundred persons; and upon the verdict was imposed a sentence of fine and imprisonment. At the time of the arrest, eleven pints of intoxicants were found by the officers at the place where the proof tends to show the alleged sale was made. Such possession was admitted by the accused; and Marvin Wills for the state testified that a few days prior to the arrest he purchased from her one pint of whiskey.

The first assignment challenges the correctness of instruction number two given on behalf of the state, whereby the court told the jury that "if they believe from the evidence intoxicating liquors were found stored and concealed in the house of the defendant at the time she was arrested, then the burden rests upon her to show that the liquors were not being kept and disposed of in violation of the law". This charge, it is contended, gives to the possession of the liquors the quality and force of prima facie proof of unlawful storage and sale, in violation of the holding in *State* v. *Sixo*, 77 W. Va. 243. The tenableness of this proposition is to be tested by the language of the statute applicable to such a situation and by the province of the legislature in the assertion of the police power of the state to regulate and suppress the liquor traffic. The Sixo case dealt with a wholly different provision of the prohibition law; namely, section 31 of chapter 32A, Code 1916, prohibiting the bringing into the state liquor in excess of half a gallon except in containers labeled as therein required, and providing that "the liquors in the possession of any person violating this section may be seized and shall be *conclusive evidence* of the unlawful keeping, storing and selling of the same by the person having such liquors in his possession". There was no search of premises, nor any question of the concealment of liquors. Defendant, when apprehended, was at a railroad station, with prohibited intoxicants in his possession in excess of the quantity so allowed; and it was contended on behalf of the state that the receptacle containing them was insufficiently labeled, and hence that mere possession, without other proof, was conclusive of an intent to dispose of the liquors contrary to law. Here is presented the very different question of the validity and application of section 11 of the same chapter, providing that in case of search of premises the finding of liquors thereon "shall be prima facie evidence of unlawful sale and keeping and storing for sale of the same" by the occupant.

Without substantial conflict, the decisions sustain the validity of statutes making possession of liquor, under the same general or similar circumstances, prima facie or presumptive evidence of unlawful sale or storage, and imposing

on the accused the duty of explaining such possession and establishing its lawfulness. Black on Int. Liq., §§60, 525; Joyce on Int. Liq., §§549, 682; 2 Woolen & Thornton on Int. Iiq., §§639, 923, 925; *State* v. *Cunningham,* 25 Conn. 195; *State* v. *Intoxicating Liquors,* 109 Ia. 145; *State* v. *Barrett,* 138 N. C. 630, 1 L. R. A. (N. S.) 626, with note citing many additional cases; *State* v. *Russell,* 164 N. C. 482; *Parsons* v. *State,* 61 Neb. 244; *Ex parte Woodward,* 181 Ala. 97; *Fitzpatrick* v. *State,* 169 Ala. 1; *State* v. *Higgins,* 13 R. I. 330.

In *Parsons* v. *State, supra,* it was held the legislature may, in an act regulating the sale of intoxicants, provide that possession thereof by one not authorized to sell them shall be "presumptive evidence of a violation" of the act, and hence of itself sufficient to support a conviction, unless the person charged shall satisfactorily account for and explain the possession; and that such a statute is not violative of the constitutional provision that no person shall in any criminal cases be compelled to give evidence against himself or be denied the right of trial by jury. But to have this effect the possession must be established by competent evidence. Such a rule existed in the trial of many criminal cases at common law, and there seems to be no legal principle or constitutional provision inhibiting a legislature from enacting a law incorporating the same into a statute. In *Ex parte Woodward,* 181 Ala. 107, it was said that the accused may introduce, in negation of the mere prima facie presumption the statute raises, every fact and circumstance attending or relating to the keeping of the forbidden liquors. Obviously, the chief object of the statutory rule is to require more than the mere general denial of an intent to keep the liquors for unlawful purposes. The presumption is evidentiary, not conclusive. The jury may or may not accept it as conclusive of guilt. They may disregard it as insufficient upon that question.

The statute construed in *State* v. *Barrett,* 138 N. C. 630, made possession of more than one quart of liquor prima facie evidence of an intent to violate the prohibition against illegal sales; and, likewise, it was held not to be an unconstitutional invasion of the province of the judiciary, or a deprivation of

equal protection of the laws or of the presumption of inno-
cence, or as making prima facie evidence of guilt a fact hav-
ing no substantial relation to the criminal act or material
tendency to prove it. The court there observed: ''Certainly
there is nothing here to bring us to the conclusion that the
standard fixed is so unreasonable and arbitrary as to have
no relation to the offense charged. An examination of a large
number of cases from those states which have enacted re-
pressive legislation in regard to the liquor traffic shows that
it has been found necessary to incorporate this and similar
provisions in their statutes, and the courts of such states
have'' generally sustained them. ''If we should say that
the keeping of 'more than a quart' has no relation to the
offense, what standard shall we set? Upon what more ra-
tional basis could we fix the limit—at a gallon or any other
quantity? It is not our province or duty to supervise the
legislative mind in this regard. To the suggestion that this
law may be abused in its execution, and the personal and
property rights of the citizen invaded, it is sufficient to say
that human wisdom has never yet devised any system of
legislation or jurisprudence to which the same objection may
not be urged''. The same court, in *State* v. *Russell,* 164 N.
C. 482, in dealing with a subsequent statute prohibiting the
keeping of liquor for sale and providing that possession of
more than two and a half gallons should be prima facie evi-
dence of an unlawful intent to sell, applied the conclusion
that the act was not unconstitutional as an invasion by the
legislature of the judicial powers, or because depriving the
accused of the benefit of the presumption of innocence and
the doctrine of reasonable doubt, and placing on him the
burden of proving himself innocent; and said: ''The words
'prima facie', as used in connection with the force and effect
of the evidence, means no more than that the latter, on its
face or at first view and without contradiction or explanation,
tends to prove the fact in issue—not that it does necessarily
establish it. Perhaps a more exact legal definition is that it
is such as is, in judgment of law, sufficient to establish the
ultimate fact, and, if not explained or rebutted, remains suf-
ficient for that purpose. It does not, in law, forestall the

verdict, but leaves the inference of guilt, as in this case, for the jury to find, after excluding all reasonable doubt''. Indeed, the supreme court of Mississippi, in *Gillespie* v. *State,* 96 Miss. 856, where was involved an act making the possession of appliances adapted to the retailing of intoxicating liquors presumptive evidence of sale, sustained a conviction predicated upon the ''presumptive evidence'' alone, in the absence of explanatory testimony. The court took the view that ''although this conviction is had in the face of a record containing no direct proof that appellant did unlawfully sell intoxicating liquors, it does contain such proof as the law says shall constitute, in the absence of any opposing testimony, presumptive evidence of guilt, and in this condition the court is bound to affirm''.

The same evidentiary rule has been applied, as stated, upon the trial of indictments for many common law offenses. Frequently, when it appears that property has been stolen and recently thereafter found in the exclusive possession of the person charged with the theft, the law makes it his duty to show how he obtained it, and if he fails to do so the jury may properly infer that his possession was dishonest and from this and other incriminatory circumstances conclude that he was the thief. And where property so possessed is identified as belonging to the owner of a building recently burglarized and as taken from it the same presumption or inference arises; and, while generally the possession alone may not be sufficient to warrant conviction of the burglary, it may with other proof be sufficient to establish larceny of the goods taken. The duty to account for the possession is the same in each instance. Indeed, there is a general consensus of opinion that a legislature may prescribe rules of evidence, declare what proof may and may not be admitted, and, when admitted, what force and effect shall be accorded to it; the only restriction or limitation being that the rules prescribed shall not infringe upon the rights guaranteed by the constitution. See 1 Wigmore Ev., §7.

There is no such infringement in an act regulating or forbidding sale of intoxicants, drugs, poisons or other hurtful liquids, and declaring that possession thereof by one not au-

thorized to keep or sell them shall be presumptive or prima facie evidence of an intent to disregard or violate the act, unless the person charged shall satisfactorily account for or explain the possession. As already intimated, this he may do by any competent evidence, whether given by himself as a witness in his own behalf or by others qualified to testify regarding the subject, or by proof of any fact or circumstance attending or relating to the manner or purpose of acquiring, keeping or storing the forbidden articles, or that the quantity is so inconsequential as to negative such an intent.

Between the fact proved as the basis of the presumption and the main fact involved, the guilt of the accused, it is essential that there be some substantial correlation or natural connection; and the inference of guilt from the existence of the fact proved, out of which the presumption arises, must not be unreasonable, strained or extraordinary. *People* v. *Carmen,* 139 N. Y. 32. Furthermore, upon the prosecution rests the burden of proving the existence of both facts—the basis of the inference and the guilt of the accused; for, while proof of the presence of concealed liquors upon the premises occupied by him imposes the duty on defendant to meet and negative the prima facie case so established, it is not incumbent upon him to assume the burden of proving his innocence on the case as a whole. That fact must still be proved by evidence on behalf of the state sufficient to convince the jury beyond reasonable doubt, subject to the qualification that possession of the concealed intoxicants remains sufficient evidence of guilt until explained consistently with law. And its probative force or effect is not destroyed by a bare denial of unlawful intent. But, after introduction by the accused of proof tending to show its lawfulness, the custody goes to the jury, with the other evidence in the case, as an element of proof of the charge averred in the indictment. These principles are sustained by the cases cited, and especially by *State* v. *Wilkerson,* 79 N. C. 888. Hence, if the instruction is amenable to criticism at all, its faultiness lies in the concluding clause, saying the "burden" rests upon defendant "to show that the liquors were not being kept and disposed of in violation of the law". Perhaps it should not

have used the word "burden", but, to avoid misapprehension, should more nearly have followed the language of section 11. Evidently, this section was intended to give the possession of concealed liquors prima facie quality and effect of proof sufficient to convict the person in whose possession or under whose control they were found, unless he explained the purpose and intent of the possession by proof indicating that he did not acquire or intend to use the liquors in violation of law. That is in effect what the instruction says, though it might have been drawn more in consonance with the express terms of the statute.

By the only other assignment, defendant claims the benefit of any error against her committed by the trial court in the admission of testimony regarding disorderly conduct along the public highway near to and in front of the premises occupied by her wherein the liquors were found. With this conduct the testimony complained of did not connect her directly or inferentially. It did not occur upon her premises. There is no proof even tending to show that any of the persons so engaged were upon her property at any time, went to or from her residence, or carried therefrom any liquors, or that she sold the liquors or was in anywise responsible for the difficulty, circumstances which the authorities say are necessary to render proof of such conduct admissible. Joyce on Int. Liq., §672; Woollen & Thornton on Int. Liq. §§926, 927. Proof of efforts to conceal sales, of attempts to effect secrecy, the frequency with which persons addicted to the use of intoxicants visited the premises of the accused, their presence there in an intoxicated condition, or the bringing in of liquors in unusual quantities, is admissible; but, without some such proximate or causal connection, there is no basis for an inference of guilt, in the absence of other proof of sales.

To what extent the testimony so admitted may have influenced the verdict, no one but members of the jury that rendered it can know; and they may not have been conscious of its actual influence. They may have considered the testimony of Wills of itself sufficient to show an actual sale of liquors to him by defendant under the circumstances detailed by

him, notwithstanding her denial. Yet, as there was an attempt to impeach him for want of veracity, the inadmissible proof may have been the decisive factor or element in inducing the verdict on which the judgment was rendered. It may have had that effect, as the conduct along the highway was riotous and flagrant, disturbing the whole community, and as such may have influenced the minds of the jurors against defendant as the real cause of the difficulty. Our decisions say inadmissible proof calls for reversal of a judgment of conviction, unless it appears clearly that its admission could not have affected the result. *State* v. *Musgrave*, 43 W. Va. 673; *State* v. *Hull*, 45 W. Va. 767. It can not be said that defendant was not prejudiced by the testimony of which she complains. Rather it may be said she was prejudiced by it.

For this reason, our order will reverse the judgment and grant a new trial.

*Reversed, verdict set aside, remanded for new trial.*